HARRY LEWIS, DAVID H. HARMON, LOUIS DUBOW, GEORGE J. CAMPO, JR., SEYMOUR BAYEWITCH, BEATRICE KORMAN, ARTHUR KALMAN, MORRIS BROCKMAN, and LOUIS KAYE, Co-Partners doing business under the name of Joint Operating Company,
Plaintiffs,

*vs.*

HAT CORPORATION OF AMERICA, BERNARD L. SALESKY, JOSEPH M. SALESKY, DAVID SALESKY, CHARLES SALESKY, CHARLES R. STEVENSON, EARL K. MUELLER, GEORGE B. MORAN, TILLMAN CAHN, FRANK H. JAMES, JOHN CAVANAGH, J. GARVAN CAVANAGH, HAROLD J. MAHNKEN, HENRY REEVE and SALESKY BROTHERS, INC.,
Defendants.

*New Castle, May 1, 1959.*

*Irving Morris* of Cohen & Morris, Wilmington, and *Milton Paulson,* New Yerk City, for plaintiffs.

*William S. Potter* of Berl, Potter & Anderson, Wilmington, and *Paul D. Miller,* of Mudge Stern, Baldwin & Todd, New York City, for defendant, Hat Corporation of America.

*S. Samuel Arsht,* of Morris, Nichols, Arsht & Tunnell, Wilmington, and *Abraham L. Freedman,* of Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for defendants, Bernard L. Salesky, Joseph M. Salesky and David Salesky.

MARVEL, Vice Chancellor: Plaintiffs as partners are the owners of twenty shares of Hat Corporation of America's 4½% cumulative preferred voting stock and bring this action for the benefit of such corporation, naming the directors of Hat Corporation and Salesky Brothers, Inc.[1] as the real defendants.

The verified complaint alleges that in April 1955 Salesky Brothers, Inc. directly and indirectly acquired sufficient voting stock of Hat Corporation to cause to be elected to its board a majority of Salesky nominees or designees. It is further charged that thereafter, in July 1956, Hat Corporation was caused to purchase the operating assets and business of Salesky Brothers, Inc. and its affiliates at an agreed price of $1,875,373.52, a transaction which was consummated in September 1956.

It is contended that the price paid for such assets was excessive and exorbitant bearing no proper relationship to their fair and reasonable value, being more than $400,000 in excess of the value of such assets as carried on the books of the selling corporation and more than thirteen times the average earnings attributable to said assets over a period of three years prior to said sale; that such acquisition benefited the Saleskys rather than Hat Corporation; that the corporation had established an enviable reputation as a leading manufacturer of quality hats, and that the acquisition by it of the Saleskys' business, which was essentially in the low price hat field, had not only injured Hat Corporation's established reputation and good will but had served the improper purpose of enabling the Saleskys to discharge bank loans of approximately $1,900,000.

The complaint goes on to allege that under the terms of the agreement Hat Corporation was caused to agree to ship finished hats and make collections for the account of Salesky Brothers, Inc., and that the

---

1. In September 1956, the name of Champ Hats, Inc. was changed to Salesky Brothers, Inc.

Saleskys upon acquiring domination and control of the corporation had caused the corporation to pay excessive and exorbitant salaries and other benefits to themselves in addition to continuing the salaries and other benefits paid to officers and executives whose duties had been assumed by the Saleskys or their nominees.

The complaint further charges that the individual defendants have caused the facilities of the corporation to be used for the benefit of Salesky Brothers, Inc. and its affiliates without consideration, and concludes with a prayer that defendants other than Hat Corporation be required to account for their profits and for the damages sustained by such corporation as a result of the matters complained of.

Defendants have moved for summary judgment on three grounds, (1) that the transactions complained of were approved and ratified by the stockholders of Hat Corporation, (2) that plaintiffs have not complied with Rule 23(c) of this Court, Del. C.Ann., and (3) that plaintiffs as beneficial owners of preferred rather than common stock can point to no injury suffered by them as a result of the acts complained of and accordingly lack the capacity to maintain this derivative action.

The complaint centers on the alleged impropriety of the acquisition of the properties of Champ Hats by Hat Corporation and ignores the fact that this basic transaction was fully disclosed to the stockholders and ratified by them. In a proxy statement of August 2, 1956 sent out prior to the special meeting which approved the purchase here attacked stockholders were informed that the transaction in question had been negotiated by a committee of directors not allied to the Salesky group notwithstanding the fact that such group as of June 15, 1956 owned or controlled 42.7% of the common stock of Hat Corporation. An earlier proxy statement of January 27, 1956 sent out prior to the annual meeting of stockholders disclosed substantially the same Salesky stock interest as of January 1956, an interest which had been acquired in April 1955 and had led to the election of three Salesky directors on June 23, 1955. The stockholders were also informed in the August 2, 1956 proxy statement that the Salesky directors did not act for Hat Corporation in the negotiations leading up to the purchase

under attack or take part in meetings of directors when the transaction was considered and later approved,[2] and it was recommended that the stockholders ratify the decision of the board in contracting to acquire an established business in the low price hat field in order to complement the corporation's traditional line of medium and high priced hats. The approximate price agreed on was disclosed together with the information that it was based among other things on a study of the earnings of the Champ companies and the book value of the properties to be acquired. Furnished with such information the stockholders overwhelmingly approved[3] the purchase.

■ To ignore the facts above outlined and merely to charge as plaintiffs do that the bargain complained of (which was made at a time when the Hat Corporation was just emerging from the effects of a crippling strike at its Norwalk, Connecticut plant) was unconscionable and so void is to beg the question. Defendants having submitted the records concerning the transaction under attack and moved for summary judgment, it became incumbent on plaintiffs to offer proof which would either establish that the purchase was constructively fraudulent or otherwise invalid thereby carrying the required burden in a situation in which the proxy information was explicit and in which a majority of the stock, excluding the Salesky controlled shares, approved the transaction (Compare *Schiff v. R.K.O. Pictures,* 34 *Del. Ch.* 329, 104 *A.2d* 267 and *Allaun v. Consolidated Oil Co.,* 16 *Del.Ch.* 318, 147 *A.* 257), or in the alternative filed affidavits raising genuine issues of fact as to the legality of the purchase. Plaintiffs have done neither.

■ ■ It is clearly established in Delaware that stockholder ratification of corporate action which is not per se void renders such action immune from minority stockholder attack, *Fidanque v. American Maracaibo Co.,* 33 *Del.Ch.* 262, 92 *A.2d* 311, and there is nothing in the record before me to indicate that plaintiffs' grievance is any-

2. As of July 19, 1956 when the transaction was approved by the board, six out of fourteen directors represented the Salesky interests, however, it was a quorum of five old directors which voted approval.

3. Excluding all of the shares owned by defendants, it appears that a majority of "disinterested" stockholders voted in favor of the plan.

thing more than disagreement with a business decision duly ratified by the stockholders.

The proxy statement setting forth the matters to be acted on at the August 29 special meeting of stockholders clearly described the specific matter before the meeting to be approval of the agreement to purchase Champ Hats, Inc. at a price not to exceed $1,915,000. The various items to be purchased, including trademarks and tradenames, were described in detail, and it was pointed out that Hat Corporation did not assume any debts, obligations or liabilities of the seller except those assumptions specifically described, i. e., the obligations as well as the rights of the seller " * * * in and under leases and customers', suppliers', union and employees' contracts * *."

The proxy statement disclosed that the purchase contemplated a cash payment of $825,000 of which $500,000 was to be paid on closing with the balance of $325,000 conditionally payable out of aggregate net earnings under specified terms and conditions. The statement further pointed out that the sum of $75,000 would be paid for Champ's molds, blocks, flanges and dies, items which had not been included in the April 28, 1956 Champ Hats balance sheets. The difference between the total purchase price and the stipulated cash payment was, according to the proxy statement, to be paid by notes.

The total price to be paid for the property, plants and equipment of the seller was stated to be $385,000 in excess of their carrying value, which was given at $733,750, and it was explained that to the extent the purchase price for such property, plants and equipment was in excess of the carrying amounts on the seller's books, the annual depreciation would be greater than the charges currently provided for, but that such amount of depreciation could not be immediately determined because of the terms and conditions controlling payment of the balance of $325,000 due on the purchase price. As of July 22, 1958, according to the affidavit of the secretary of Hat Corporation, no payments on such balance had been made.

There would appear to be a little doubt but that the claimed price disparity of $400,000 alluded to in the complaint finds its source in such conditional item of $325,000 and in the unlisted item of $75,000

for molds, blocks and the like. In any event a careful reading of the material presented to the stockholders persuades me that the basis for the committee's recommendation was fully and fairly presented to them, including its advantages for the Saleskys, and nothing in the record raises any inference that the directors in a situation in which at least certain of them stood to benefit as a result of consummation of the transaction complained of acted dishonestly or with reckless indifference to the welfare of the whole body of stockholders.

■ Turning to the question of value, this Court on more than one occasion has pointed out the uncertainties in book value, and here not only the value of the seller's assets as well as its earnings but considerations such as the desirability of entering the cheap hat field obviously entered into the decision to buy and the ultimate fixing of a price for the purchase under attack. It is well established that it is not the proper function of this Court to overturn a business transaction duly ratified by the stockholders absent a showing of fraud, a gift of assets, illegality, or ultra vires action, and plaintiffs have failed to cast any real doubt on the basic legality of the purchase of which they complain.

■ In short, assuming that a clear case of director self-dealing has been presented, faced with stockholder ratification plaintiffs have failed either to carry the burden of establishing a shocking disparity between the price paid and the value of the purchased assets or otherwise effectively to discredit data contained in the papers attached to defendants' motion. Compare *Potter v. Sanitary Co. of America,* 22 *Del.Ch.* 110, 194 *A.* 91, and *Schiff v. R.K.O. Pictures, Corp.,* supra.

While the Delaware cases on sales of assets under the statute are not strictly in point, they are, of course, persuasive, *Gerlach v. Gillam,* 37 *Del.Ch.* 244, 139 *A.2d* 591. However, the situation here is not comparable to the one found in the cited case, one in which a proposed purchase of assets for stock, if consummated, would have served to fortify the position of the seller as the dominant figure on the buyer's board. Here, the Saleskys acquired their Hat Corporation stock prior to asserting their views on the proposed purchase of their corporation's assests, and their proposal was fairly presented to the stockholders and approved. Accordingly, summary judgment for defendants will be

entered on those allegations of the complaint pertaining to matters having to do with the proposed purchase which were disclosed to stockholders and ratified by them.

■ ■ The other allegations of the complaint as pleaded which are concerned with technically unratified actions such as allegedly excessive salaries and other benefits claimed to have been paid to themselves by the Saleskys, the use of Hat Corporation facilities by Salesky Brothers, Inc. and the retirement of Salesky bank loans by means of the proceeds of the sale do not set forth that type of intracorporate action which is not subject to stockholder ratification. They will be dismissed for failure of plaintiffs to comply with Rule 23(b), no proper explanation having been set forth in the complaint for plaintiffs' failure to obtain from the stockholders such action as plaintiffs desire.

In view of these determinations, which were reached after consideration of the pleadings, briefs and after oral argument, the technical defense of plaintiffs' alleged lack of interest as preferred stockholders and the question of their capacity to sue will not be considered. Such defense should have more properly been raised in a separate argument on defendants' motion to dismiss on such grounds rather than as an afterthought to defendants' motion for summary judgment based on ratification. Had the purchase complained of been brought about through the issuance of common stock defendants' argument on this score would carry considerable force inasmuch as any property so acquired regardless of its true value would have been purchased entirely at the expense of common stockholders. Having determined, however, in disposing of defendants' motion based on stockholder ratification that the purchase complained of caused no legally recognizable injury to the corporation or any of its stockholders, there is no need to decide the question of plaintiffs' possible future injury and whether or not their capacity to sue could be determined short of a full hearing.

Order on notice.