**Lawrence KERNER, Plaintiff,**

v.

**Jerome F. CROSSMAN, E. W. Axe, Ruth H. Axe, Donald W. Ellsworth, Kenneth O. Mott-Smith, Henry Logan, J. Keith Torbert, E. W. Axe & Co., Inc., the Huntington Corporation, Axe Securities Corporation and Axe-Houghton Fund B, Inc., Defendants.**

United States District Court
S. D. New York.

May 31, 1962.

Stanley L. Kaufman, and Irwin M. Taylor, of Kaufman, Taylor & Kimmel, New York City, for plaintiff.

Edward C. McLean and Robert von Mehren, of Debevoise, Plimpton & McLean, New York City, for defendants

E. W. Axe, Ruth H. Axe, E. W. Axe & Co., Inc. and Axe Securities Corp.

William Stackpole, of Parker, Duryee, Benjamin, Zunino & Malone, New York City, for defendant Axe-Houghton Fund B, Inc.

William Leighton pro se.

Axelrod & Jaffe, New York City, for George Hillman.

BONSAL, District Judge.

On the motion of the plaintiff, this Court issued an order on April 5, 1962 ordering a hearing for the purpose of:

(1) Determining whether the settlement of this action as proposed in the stipulation of settlement between the parties dated April 4, 1962 should be approved by this Court and whether the complaint should be dismissed with prejudice;

(2) In the event of the approval of the aforesaid settlement, determining the Court's allowance to plaintiff's attorneys for counsel fees and disbursements for services rendered in the prosecution of this action, said allowance under the terms of the settlement to be paid by Axe-Houghton Fund B, Inc.; and

(3) Directing a hearing to be held on May 9, 1962, at which any stockholder of Axe-Houghton Fund B, Inc. could appear in person or by attorney and show cause, if any, why the settlement should not be approved and why the complaint should not be dismissed with prejudice, and if the settlement is approved, why an allowance of counsel fees and disbursements should not be made to plaintiff's attorneys in the discretion of the Court.

Said order directed that notice of the hearing fixed for May 9, 1962 be mailed on or before April 16, 1962 to each stockholder of record of Axe-Houghton Fund B, Inc. at the close of business on April 6, 1962, at their addresses appearing on the books of Fund B. The notice contained a concise summary of the litigation, the details of the stipulation of settlement and the provision contained in the stipulation that the Court may allow plaintiff's counsel fees and disbursements, including reasonable accounting fees in such amount as determined by the Court but not to exceed the sum of $75,000., to be paid by Fund B in three annual installments. An affidavit has been supplied to the Court to the effect that the notice to the stockholders of Fund B was mailed by the First National City Bank, transfer agent of Fund B, on April 16, 1962, to each stockholder of record of Fund B as of the close of business on April 6, 1962.

The hearing was duly held in open court on May 9, 1962. At the hearing the Court heard, in support of the proposed settlement, counsel for the plaintiff and counsel for the several defendants. The Court also heard special counsel for Fund B, who stated they had been retained as independent counsel to represent the interests of the Fund and its stockholders. After due consideration, the independent counsel reported that they found that the proposed settlement had been negotiated at arms length and had recommended to the Board of Directors of Fund B that the settlement provided in the stipulation is in the best interests of Fund B and its stockholders.

At the hearing on May 9, all stockholders of Fund B present in person or represented by counsel were given the opportunity to make statements either in support of or against the proposed settlement. Letters received by the Court from stockholders of Fund B prior to the hearing were incorporated in the record of the proceedings. All parties who appeared in person or by attorney at the hearing on May 9 were allowed five days by the Court to furnish any additional statements which they desired with respect to the proposed settlement.

The action here involved is a derivative action instituted by plaintiff as a holder of approximately 607 shares of Fund B, on behalf of himself and all other stockholders of Fund B similarly situated. In his complaint, filed on March 21, 1961, plaintiff alleges that the investment advisory fees and distribution fees paid since December 1, 1955 by Fund B to E. W. Axe & Co., Inc. and Axe Securities Corporation, respectively,

have been excessive and were not negotiated at arms length; that defendants have solicited proxies by means of false and misleading proxy statements; that defendants have conspired to misappropriate the assets of Fund B for their personal enrichment; and that the individual defendants have wrongfully availed themselves of confidential investment information paid for by Fund B and have bought securities for themselves in competition with, and on more favorable terms than Fund B; and that these acts were in violation of the Investment Company Act of 1940 and the rules thereunder and the rules under the Securities Exchange Act of 1934. The complaint seeks to have the defendants account for and pay to Fund B their profits and Fund B's damages.

The defendants, E. W. Axe, Ruth H. Axe, E. W. Axe & Co., Inc. and Axe Securities Corporation, by answer denied all the material allegations of the complaint and have asserted that plaintiff's suit is wholly without merit.

The litigation was pressed actively by the plaintiff, who made application for a Receiver before this Court, which application was denied by Judge Murphy, who found no evidence of wrongdoing by the defendants sufficient to justify the drastic remedy of the appointment of a Receiver.

The crux of the controversy appears to be the rate of the investment advisory fees charged Fund B by the investment adviser, E. W. Axe & Co., Inc., and the rate of distribution fee paid by Fund B to Axe Securities Corporation.

The investment advisory fee is the fee paid by Fund B to the investment adviser, E. W. Axe & Co., Inc., for services consisting of systematic review by its research department of securities of some 1,000 companies which may qualify for Fund B's portfolio (Fund B's portfolio includes securities of some 300 companies in some 29 industries); preparation of monthly economic surveys and detailed surveys of particular industries; payment of or reimbursement to Fund B for salaries of officers and directors' fees of Fund B; and the furnishing of office space, telephone services and other office facilities to Fund B.

The distribution fee (sometimes referred to as the continuing fee) is the fee paid by Fund B to Axe Securities Corporation for services in connection with the sale of Fund B's stock to the public. Part of the fee is reallowed to dealers who have sold shares of Fund B stock which remain outstanding for a six months' period, and part is used to pay the costs of (a) quoting prices of shares of Fund B, (b) printing and distributing statistical information and other material for the stockholders (other than regular reports to stockholders), (c) qualifying and maintaining the qualification of the shares of Fund B for sale under the Securities Act of 1933 and applicable Blue Sky laws, and (d) all expenses in connection with the redemption of shares.

In addition to the distribution fee received from Fund B, Axe Securities Corporation charges a selling commission on sales of Fund B stock which is paid by the purchasers.

The present investment advisory contract provides for investment advisory fees to E. W. Axe & Co., Inc. computed at the annual rate of .55 of 1% on the average daily net assets of Fund B. The present distribution contract provides that Axe Securities Corporation will be paid a distribution fee by Fund B computed at the annual rate of .20 of 1% of the average daily net assets of Fund B. It should be mentioned in passing that defendants assert that relevant information as to the existing investment advisory fees and distribution fees have been fully disclosed to all purchasers of Fund B's stock through its prospectuses, and that the present investment advisory contract and the distribution contract were approved by the stockholders of Fund B at a special meeting held on May 15, 1961 at which some 63.3% of the outstanding shares were represented, by a vote of more than 97% of the shares represented at the meeting.

No evidence to the contrary has been presented to the Court, nor has there been any showing that Fund B has not

duly complied with the provisions of the Securities Exchange Act of 1934 and the Investment Company Act of 1940 and the rules promulgated thereunder with respect to the furnishing of full and adequate information to its stockholders and to prospective purchasers of its stock.

The stipulation entered into by the parties for the purpose of terminating this litigation would provide a new investment advisory contract and a new distribution contract which would both be retroactive to April 1, 1962 and which would provide for a reduced scale of fees.

If the settlement is approved by the Court, these new contracts will become effective upon approval by the stockholders of Fund B and upon their execution thereafter in accordance with the provisions of the Investment Company Act of 1940.

Although it is not specifically stated in the stipulation, the Court assumes that the new contracts will provide for no diminution of the services to be rendered by the investment adviser, E. W. Axe & Co., Inc., and the distributor, Axe Securities Corporation, from those which they are required to perform under the present contracts.

The stipulation of settlement provides that the reduced scale of investment advisory fees and distribution fees shall not be increased before March 31, 1965 without Court approval. It also provides that the settlement shall not prevent Axe Securities Corporation from requesting E. W. Axe & Co., Inc. to perform the distribution services for which the former receives its continuing fee. In effect, this would permit an assignment of the distribution contract from Axe Securities Corporation to E. W. Axe & Co., Inc., subject to the approval of the stockholders of Fund B. If such assignment should be made with the stockholders' approval, E. W. Axe & Co., Inc. would be entitled to receive all or part of the continuing fee formerly payable to Axe Securities Corporation.

Compared to the present investment advisory fee to E. W. Axe & Co., Inc. computed at the annual rate of .55 of 1% on the average daily net assets of Fund B, the new rate provided in the stipulation would be based on a reduced scale of annual rates as follows:

| Average Daily Net Asset Value of Fund B | Annual Rate of Percentage of Average Daily Net Asset Value |
|---|---|
| First $100,000,000 | 50/100 of one per cent |
| Next $200,000,000 | 40/100 of one per cent |
| Next $200,000,000 | 30/100 of one per cent |
| Over $500,000,000 | 25/100 of one per cent |

Compared to the present distribution or continuing fee paid to Axe Securities Corporation computed at the annual rate of .20 of 1% of the average daily net assets of Fund B, the stipulation would provide for continuing fees paid on a reducing scale of annual rates as follows:

| Average Daily Net Asset Value of Fund B | Annual Rate of Percentage of Average Daily Net Asset Value |
|---|---|
| First $50,000,000 | 20/100 of one per cent |
| Next $50,000,000 | 15/100 of one per cent |
| Next $400,000,000 | 10/100 of one per cent |
| Over $500,000,000 | 5/100 of one per cent |

The net asset value of Fund B as of March 1, 1962 was $186,584,926., and the number of shares outstanding was approximately 20,254,000 held by some 82,900 stockholders. So long as said Fund remains at approximately its present size, it is estimated that the new scales would represent an annual saving of $179,877. in investment advisory fees and $111,585. in distribution or continuing fees, or a total of $291,462. If the net asset value of Fund B increases, the savings will be proportionately greater.

Besides considering the fairness of the new schedules of investment advisory fees and distribution fees, the Court is also asked to pass on plaintiff's attorneys' fees and disbursements and accounting fees. Here the stipulation provides that these will be paid out of Fund B and that the defendants will not object to the fixing by the Court of an amount not to exceed $75,000.

A number of objections have been made to the proposed settlement. The Court received communications from three obviously very small stockholders questioning the propriety of having the plaintiff's attorneys' fees, disbursements and accountants' fees paid out of Fund B rather than by the defendants themselves and expressing the view that, in any event, fees in the amount of $75,000. would be excessive.

At the hearing, Mr. Westlane, a stockholder owning 576 shares of Fund B, objected to the proposed settlement because he felt too much money was being paid to the Axes. Another stockholder, Mr. Wolkoff, holding 135 shares, expressed the view that the amount being paid for investment advice was out of line with the value of the advice being received.

Formal appearances by or on behalf of two stockholders, representing a total of 1,051 shares of Fund B stock, were also made at the hearing on May 9. The first of these objectants, William Leighton, stated at the hearing that he was the holder of 20 shares of Fund B stock which he had acquired "by exchange" on April 27, 1962. It would appear that he acquired his shares "by exchange" purely for the purpose of appearing and contesting the settlement. Despite this, the Court has considered his objections and finds them totally without merit. He would seek to extend this litigation and, indeed, to participate in it, and it is the very purpose of the settlement, if it is approved by the Court, to preclude further litigation in the matter. Section 17(h) of the Investment Company Act and Chabot v. Empire Trust Co., 301 F.2d 458 (2d Cir., 1962) cited by Leighton are not applicable to the stipulation of settlement.

The second formal objectant was George Hillman, the owner of some 1,031 shares of Fund B, who appeared by his attorney, Mr. Bernard Jaffe. His objections seemed to be based on the grounds that the complaint states a meritorious action and that it should be pursued to its conclusion. Mr. Hillman refers to what he perceives to be the great evils pervading the investment company industry and that these are well illustrated by the relationship of the parties in the present action. He believes it to be wrong, and contrary to the interests of the stockholders, to allow such a promising litigation to be terminated by a settlement of this nature. Mr. Hillman contends that Fund B should pay no distribution or continuing fees at all; that, indeed, the stockholders would be better off if new shares were not offered to the public; and finally, that the scale of investment advisory fees and distribution fees provided in the stipulation are excessive, and that it is no answer that they may be in line with similar fees charged by other open-end investment funds because, in Mr. Hillman's opinion, the whole scale of such fees is outrageous.

Mr. Hillman's attack would appear to go far beyond the merits of this particular settlement. His attack is on the industry as a whole and the way it conducts its business. The Congress, with a view to meeting many of the abuses that existed in the investment company

industry, saw fit to pass the Investment Company Act of 1940 and to bestow upon the Securities and Exchange Commission the power and duty to take such measures as are appropriate to meet abuses. Section 10(a) of the Investment Company Act of 1940 lays down requirements for the having of disinterested directors, and its provisions appear to have been complied with. The Commission is the regulatory power properly charged with supervision of the industry. The examples cited by Mr. Hillman in his objections appear to the Court to be irrelevant to the questions which it is called upon to decide here.

Coming to the merits of the proposed settlement, it has been satisfactorily demonstrated to the Court that the new scale of investment advisory fees is not out of line with similar fees charged by other open-end investment trusts of comparable size and importance. Moreover, before the new scales of investment advisory fees and distribution fees become effective they must be passed upon by the stockholders, and Fund B will be required to comply with the proxy rules of the Securities and Exchange Commission in furnishing an adequate proxy statement to the stockholders.

The new scales being lower than the present ones will result in substantial savings to the stockholders of Fund B. Indeed, assuming the Fund should remain at its present size, some $291,000. per annum which now goes into the payment of fees will become available to the stockholders in the form of dividends. Moreover, under the proposed scale for investment advisory fees the expense ratio of Fund B, exclusive of the distribution fee, will be .54 of 1% of its net assets, which is substantially below expense ratios of other comparable funds having net assets between $125,000,000. and $225,000,000. and which charge an advisory fee of ½ of 1% of net assets.

| Name | Expense Ratio as % of Net Assets | Net Assets in Millions |
|---|---|---|
| Commonwealth Investment Co. | .59 | $170.7 |
| Delaware Fund | .74 | 137.3 |
| Diversified Growth Fund | .71 | 149.4 |
| Eaton & Howard Balanced | .58 | 225.0 |
| Eaton & Howard Stock | .62 | 212.0 |
| Group Common Stock | .80 | 159.7 |
| Institutional Growth | .71 | 147.0 |
| National Securities Growth | .76 | 137.9 |
| Selected American Shares | .64 | 125.0 |
| Axe Houghton Fund B (Note 1) | .54 | 186.6 |

Note 1: Adjusted for management advisory fees under new contract proposal and exclusive of "continuing fee".

Reference:
Investment Companies Chart Book—1962 Edition (Published by Arthur Wiesenberger & Co.)
Johnson Charts—1961

———◆———

Having given due and full consideration to the information and memoranda submitted to the Court in support of the proposed settlement and with the objections made thereto, the Court finds that the proposed settlement is fair and in the interest of Fund B and its stockholders.

This leaves only the question of the plaintiff's attorneys' fees, disbursements and accounting fees. The first question which arises is why these fees should be paid by Fund B and not by the recipients of the investment advisory fees and distribution fees which are being scaled down thereby. It has been urged that, since they have agreed to the reduction of the scale of fees, the previous fees were too high and, therefore, they have been unduly enriched and should meet the expenses of the settlement. However, the Court finds no credible evidence that the previous scale was unconscionable or outrageous. A ½ of 1% rate has sometimes been referred to as the classic fee for the industry, and there was a showing that some 18% of the funds are charged in excess of this rate.

The Court accepts the view that this is not a question of unjust enrichment to the defendants but is a bona fide attempt on all sides to end a protracted and expensive litigation and that, as previously stated, the settlement proposed is for the benefit of Fund B and its stockholders.

Accordingly, the Court concludes that, in view of the apparent and immediate saving to Fund B which will result if the new rates are approved by the stockholders, it is proper that the amount of plaintiff's attorneys' fees, disbursements and accounting fees be paid out of Fund B. In Kellmer v. Prankard, 147 N.Y.L.J. No. 58 at 14, March 26, 1962 (N.Y.Sup. Ct.) involving Affiliated Fund, Inc., Mr. Justice Greenberg approved a settlement and payment of plaintiff's fees and expenses out of the Fund, where the annual saving to the Fund from the settlement was substantially less than it is here. The Court has carefully reviewed the application for attorneys' and accountants' fees submitted by plaintiff's attorneys and the Memorandum of Law which they have submitted in support thereof, and finds that, having in mind the various considerations presented, a reasonable sum to cover attorneys' fees, disbursements and accountants' fees is $60,000. In accordance with the stipulation of settlement, said sum shall be paid to the plaintiff's attorneys by Fund B in three annual instalments of $20,000. each. The first instalment will be payable on the first day of the month following the approval of the new contracts by the stockholders of Fund B, and the remaining instalments will be payable one year and two years thereafter, respectively.

Settle Order on Notice.