**Daniel H. TRAINOR, Plaintiff,**

**v.**

**T. Roland BERNER et al., Defendants.**

**No. 66 Civ. 2177.**

United States District Court,
S. D. New York.

Sept. 27, 1971.

**1144**

Pomerantz, Levy, Haudek & Block, New York City, for plaintiff; Abraham L. Pomerantz, Mordecai Rosenfeld, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendants Berner, Perkins, Bull, Power, Lane, Smith, McSweeney and Morris; William J. Manning, Dean C. Rohrer, New York City, of counsel.

David Lasky, New York City, for defendant Curtiss-Wright Corp.

Spencer & Tunstead, New York City, for defendant White.

Fuerst, Fisher, Levy & Goulder, Cleveland, Ohio, for objector, Sarah Fisher; Stanley M. Fisher, Cleveland, Ohio, of counsel.

LASKER, District Judge.

This is an application under Rule 23 of the Federal Rules of Civil Procedure for approval of the settlement of a stockholder's derivative suit. By court order, and on notice mailed to all stockholders setting forth the terms of settlement, a hearing was held April 10, 1970, at which counsel for the parties and for one objectant were heard.

The suit alleges violations of § 10(b) of the Securities Exchange Act of 1934 (the "Act") and, as pendent matters, violation of state law. The plaintiff is a stockholder of Curtiss-Wright Corporation ("Curtiss"), in whose behalf the action is brought. Defendant Berner was president, chairman and a director of Curtiss at the time of the transactions complained of, and the other individual defendants were all directors. Two claims are made. The first alleges that, threatened by a take-over of Curtiss, some of the directors falsely informed the other directors that the take-over would be adverse to Curtiss' interests, and that as a result the directors caused Curtiss, through a tender offer, to waste its assets by purchasing 1,000,-113 of its own shares at a price per share of $10 above market. The second attacks the granting to defendants Berner, Morris and others of the right, pursuant to Curtiss' Restricted Stock Purchase Plan, to buy 40,000 and 8,000 shares of Curtiss, respectively, at a price of $6.34 per share, at a time when the market price was $25.30. It is claimed that the grant of this right—when added to the salaries paid the recipients—constituted excessive compensation and a waste of Curtiss' assets.

In answer to the complaint all the defendants entered a general denial. Defendant White also asserted the affirmative defense that his decisions as a director were made in good faith for the benefit of Curtiss.

The action was instituted in July 1966. In December 1965, another Curtiss stockholder had commenced suit against the same defendants on the same state of facts in the Supreme Court of the State of New York (Rosenfeld v. Bull, Index No. 12873/1969), claiming a breach of the directors' fiduciary duties. In order to prevent duplication of effort and expense to all parties and undue burden on defense witnesses, the attorneys for defendants here and in the state case cooperated in a joint prosecution of the actions. As a result, most of the discovery—depositions and exhibits—justifying the proposed settlement in both courts emanates from the state court proceeding.

The stipulation of settlement provides, as would be expected, that the settlement of each of the cases—state and federal—is contingent on the settlement of the other. Pursuant to state procedure, Mr. Justice Brust on September 5, 1969, ap-

pointed a referee to conduct a hearing and report as to the fairness, reasonableness and adequacy of the settlement. That hearing was held, and on February 4, 1970, the referee submitted his report recommending approval. Thereafter, Mr. Justice Brust entered an order approving the settlement of the state action.

We review independently below the propriety of the settlement here, the objections to it, and the answers to the objections. Before doing so, however, the terms of the settlement must be described.

The stipulation provides that the case be terminated on the following basis:

I. As to the Restricted Stock Purchase Plan

A. The balance of the shares available under the Plan are not to be issued at less than 40% of the market value on the date the option is granted.

B. Neither Berner nor Morris shall be permitted to acquire any further shares under the Plan.

C. Curtiss shall not finance any purchases under the Plan.

II. Neither Berner nor Morris shall receive any stock options under any other Curtiss plan.

III. Neither Berner nor Morris shall hereafter receive cash compensation in any form from Curtiss exceeding by more than 6% his compensation from Curtiss for the prior year, except that increases less than 6% in a given year may be offset (to the extent of the deficiency) by larger increases in later years.

IV. Upon approval by both courts of settlement, plaintiffs may apply to the New York State Supreme Court for allowance of attorneys' fees and other expenses incurred in the prosecution of both actions, and Curtiss may contest

the claim. In this connection it is to be noted that plaintiffs' counsel have represented to the court, and the notice of hearing addressed to the stockholders states, that no application for allowance of counsel fees or other expenses of plaintiffs will be made to the federal court.

### Objections to the Settlement

Sarah Fisher, one of approximately 60,000 shareholders of Curtiss,[1] raises a number of objections to the settlement. They may be divided between those which object to *any* settlement in the present posture of the case, those which attack terms of the proposed settlement in particular, and those which claim procedural defects.

a) Objections to settlement as the case stands:

Fisher contends that the plaintiff is throwing away a good case—one in which summary judgment might later be achieved—without having developed the evidence. She claims that discovery by deposition has been inadequate, giving as special examples the failure to take the depositions of such presumably important witnesses as James Ling (who, it is acknowledged, headed the company which the directors believed threatened to take over Curtiss) or his associates, or of the persons who were involved in granting Berner and Morris their stock options. She asserts that the tender offer to stockholders of December 15, 1965 was false in stating that "[t]he Corporation has no knowledge as to whether its shareholders will be approached with offers for their stock by way of invitations for tenders or otherwise," since the Board minutes of December 8, 1965 stated that the chairman had advised the Board that an "individual" was "about to make a tender offer for a substantial block of the Corporation's stock[2] with

---

1. At the time of the events described in the complaint there were 7,500,000 shares of Curtiss issued and outstanding. The record here does not indicate the number of shares owned by Mrs. Fisher.

2. The relevant material from the tender offer addressed to the stockholders and from the Board minutes is as follows:
*Invitation for Tenders*
"From time to time the Corporation has been approached by third parties indi-

intention to secure control of the Corporation," and that this discrepancy requires serious further investigation. Accordingly, she asks that the settlement be rejected or, in the alternative, that the court not act until such alleged deficiencies in discovery have been remedied.

b) Objections to the proposed terms of settlement:

Fisher criticizes the terms of the stipulation of settlement as being inadequate. She argues that the benefits to be received by the corporation are wholly *in futuro*; that no cash or affirmative payment is to be made to Curtiss; that measured by any proper standard the recovery is too small in proportion to the claim, and that the limitations on future options and compensation to Berner and Morris may actually operate as disincentives to them, with resultant damage to the company.

c) Procedural defects:

Fisher claims that the notice of the proposed settlement addressed to the stockholders was inadequate because (1) it failed to advise them that the settlement did not require the defendants to waive indemnification by Curtiss (and that accordingly defendants' expenses in this case might be paid by the company), and (2) it did not, as required by Civil Rule 11 of this Court, inform stockholders of the amount of attorneys' fees and expenses to be requested by plaintiffs.

*Answers to the Objections*

a) As to settlement now: The parties to the case argue that it is in a posture ripe for settlement. As to discovery, they point out that searching depositions have been taken of four defendant directors, including Berner and Morris themselves, as well as Edward White and F. Thatcher Lane. Plaintiff's counsel represents that he conferred on several occasions with James Ling and, as a matter of professional judgment, determined that it would be actually adverse to plaintiff's interests to take testimony before trial. Plaintiff argues that no need existed to depose any person involved in granting stock options to Berner and Morris, since all the facts relevant to the cause of action attacking those grants were objectively determinable and are contained in the 117 exhibits submitted to the referee in the state court action, or otherwise in the record. He points out that the issue as to the validity of the grants turns on the size of officer compensation—facts which are known and undisputed—and not on the subjective motives of those who made or received the grants.

Plaintiff and defendants emphasize the significant fact that seven out of the nine directors of Curtiss at the time of the transactions attacked were "outside" directors and that this clearly undercuts the theory of the complaint that the transactions were executed for the purpose of perpetuating management's control of Curtiss.

The parties to the suit hotly dispute Fisher's contention that the language of the Board minutes of December 8, 1965 establishes any falsity in the statements

cating an interest in directly or indirectly acquiring the assets of the Corporation. Such approaches have not been definitive as to price, or otherwise. The Corporation has no knowledge as to whether its shareholders will be approached with offers for their stock, by way of invitations for tenders or otherwise."

*Board Minutes—December 8, 1965*
"The Chairman informed the Directors that he had obtained information based on investigation of activities which had taken place during the year and which had been previously discussed with members of the Board, that a named individual who had previously expressed interest in the Corporation was about to make a tender offer for a substantial block of the Corporation's stock with intention to secure control of the Corporation. This information was discussed by the Board at some length and there was a continuation of previous discussions respecting the character, background and repute of the individual in question." (The Resolution authorizing the tender offer followed.)

contained in the December 15th tender offer, or in the 8K statement filed with the SEC. They assert that the language of the tender invitation pointed out to shareholders that "[f]rom time to time the Corporation has been approached by third parties indicating an interest in directly or indirectly acquiring the assets of the Corporation," and that the statement "The Corporation has no knowledge as to whether its stockholders will be approached" has now been demonstrated as true, since the information possessed by the directors was sketchy and undependable so that to have told the stockholders that they *would* be approached would have been a culpable overstatement violating the caveat of Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 948 (2d Cir. 1969) (a tender offer case), that:

> "It would be as serious an infringement of these regulations to overstate the definiteness of the plans as to understate them."

They contend further that in any event the accuracy of the statement to stockholders is irrelevant, since the case is a derivative suit in which the claim and the proof must be that the corporation or the Board members were deceived and there is no such proof; indeed, the depositions of the directors are to the contrary. Accordingly, they argue that under the rule of such cases as O'Neill v. Maytag, 339 F.2d 764 (2d Cir. 1964), no cause of action is established under § 10(b). Moreover, plaintiff states that there are other impressive strings to defendants' bows which make it quite in Curtiss' interest to settle.

First: On depositions the directors advanced sound reasons for fighting any attempted take-over by Ling or his company, Ling-Temco-Vought ("LTV"), specifically that the merger of the companies (an airplane frame builder with an airplane engine builder) might violate the antitrust laws or, at any rate, interfere with Curtiss' business of supplying engines to aircraft manufacturers other than Ling (or to the government through such other manufacturers), since Ling's competitors would be shy of doing business with Ling's subsidiary —particularly because the exchange of confidential trade information is necessary between engine and aircraft fabricators.

Second: Plaintiff points to the approving report of the referee and order of Mr. Justice Brust in the companion state action, which, while not binding and not, of course, dealing with a federal cause of action, are nevertheless worthy of consideration. He addds that the referee and the state judge approved the settlement in spite of receiving a copy of the letter to this Court by which Fisher first expressed her objections to the settlement (although she made no formal objections in the state proceeding).

Third: Plaintiff emphasizes that the transactions attacked by the complaint were referred to and investigated by the Securities and Exchange Commission, which failed to take any adverse action against any of the defendants (although "cartons" of documents were supplied by Curtiss to the Commission in connection with its inquiry and the Commission examined a number of the Curtiss directors) and which, though aware of the settlement, has expressed no view for or against it.

Fourth: Plaintiff contends that the rise of Curtiss' stock to the tender offer price of 32 some time after the tender offer was consummated (although in the later declining market it slipped markedly) is a thorny obstacle to plaintiff's ability to prove damage to Curtiss or waste of its assets.

Fifth: As to the grant of stock options to Berner and Morris, plaintiff asserts that discovery established that Curtiss flourished under their leadership, and that their total compensation was not necessarily excessive in comparison to that of other executives in positions of equal responsibility—thereby, of course, seriously weakening the second cause of action. Even more important, plaintiff argues, is the fact that the stockholders of Curtiss had, by a large majority, ap-

proved the Restricted Stock Option Plan whose terms were not violated by the grants to Berner and Morris. Curtiss is a Delaware corporation, and the governing Delaware decisions hold that "stockholder ratification of corporate action which is not per se void renders such action immune from minority stockholder attack," Lewis v. Hat Corporation of America, 38 Del.Ch. 313, 317, 150 A.2d 750, 753 (Del.Ch.1959); and "[w]hen the stockholders ratify a transaction, the interested parties are relieved of the burden of proving the fairness of the transaction. The burden then falls on the objecting stockholders to convince the court that no person of ordinary, sound business judgment would be expected to entertain the view that the consideration was a fair exchange for the value which was given," Saxe v. Brady, 40 Del.Ch. 474, 486, 184 A.2d 602, 610 (Del.Ch.1962) (and cases there cited which involved stock options).

In sum, the parties to the case take the position that Fisher's objections are incorrect on the law, that she overlooks the strength of the defense, and that, in any event, her attorneys' estimate that the case is so good that it should be prosecuted is entitled to less weight than the judgment of the plaintiff's attorneys, who, as a result of prosecuting the case, are more familiar with its strengths and weaknesses and who can be assumed to wish to win if they thought that likely. As a clincher, the parties to the case argue that the merits of the objections may be questioned where, as here, only one out of 60,000 stockholders has expressed any opposition to the settlement.

b) As to the terms of settlement: Properly relying on such cases in this district as Kerner v. Crossman, 211 F. Supp. 397 (S.D.N.Y.1962), and Glicken v. Bradford, 35 F.R.D. 144 (S.D.N.Y.1964), and Delaware holdings such as Kleinman v. Saminsky, 200 A.2d 572 (Del.Sup.Ct. 1964), plaintiff contends that *in futuro* benefits are a perfectly acceptable basis of settlement. Furthermore, says the plaintiff, the benefits to be yielded by defendants are anything but unreal or inadequate, being estimated by plaintiff in the range of a $1,440,000 "giving up" of existing rights by Berner and Morris and assurances that the Board cannot initiate tender offers in the future without stockholder approval.

c) As to procedural defects: Plaintiff argues that the notice to stockholders in this proceeding—approved by this court and the state court—fairly and adequately informed the addressees of the nature of the action and, by annexing the stipulation of settlement, of the terms of the settlement. Although plaintiff does not affirmatively answer Fisher's objection that the notice is defective because it fails to advise stockholders that the defendants have not waived their right to be indemnified by Curtiss for their expenses in this action, it appears to be implied in plaintiff's position that no such affirmative notice is necessary and that the notice contains nothing false or misleading on the subject. Furthermore, at the hearing, counsel for Curtiss represented that no reimbursement had been made by Curtiss to any defendant nor had any statement been rendered by any defendant to Curtiss, and that under Curtiss' bylaws reimbursement to any director would be allowable only after the courts act *and* independent counsel determines that the director seeking reimbursement has not been guilty of wrongdoing.

As to the question whether the notice violates Civil Rule 11 of this Court by failing to state the amount of fees and expenses which Curtiss will be requested to pay, the parties to the suit argue that it clearly does not, since no request will be made to this Court for any such allowance and, in addition, the very great bulk of the work by plaintiff's counsel was carried on in the state action and Curtiss expresses apprehension that if allowances were requested in two courts overlapping awards might be made. Furthermore, plaintiff represents that, since the purpose of Rule 11 is to give an objector the right to be heard, plaintiff will notify Fisher when any application is to be made so that she will

have the opportunity to express her position.

\* \* \*

■■ Having outlined at necessary length the objections to the settlement and answers to the objections, we come to the merits of the issues before us. At the outset we note that in reviewing a proposed settlement Judge Ryan soundly observed:

" . . . the role of the Court is limited to the extent that its business judgment is not to be substituted for that of the parties who worked out the settlement, and . . . the only question before us is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." Glicken v. Bradford, supra, 35 F.R.D. at 151.

Furthermore, as Judge Wyatt has pointed out:

"There is a strong initial presumption that the compromise is fair and reasonable. This rests on a number of factors. Counsel for [3] plaintiffs is able and experienced, particularly in the specific area with which these actions are concerned. His judgment is entitled to great weight . . ." Josephson v. Campbell, CCH Fed.Sec. Law Rep. ¶ 92,347 at p. 97,658 (S.D.N.Y.1969), not officially reported.

These wise guidelines are particularly applicable in a case in which only one of 60,000 stockholders objects to the settlement, and where, as to one cause of action (the stock options) the grant made does not violate the plan approved by the stockholders of the corporation.

■ In the light of these observations and the impressive battery of significant defenses to the complaint, to say nothing of the forceful answers to the objections, and upon a study of the proposed settlement itself, we find it to be fair and reasonable and in the interests of Curtiss and its stockholders. These views are supported by the determination, even though not binding on us, of the state court in the companion action.

■■ The benefits which will accrue to Curtiss are real and significant. That they are *in futuro* does not render them valueless or intangible, nor is it a bar to approval. There is every reason to believe that in an inflationary economy the limits on Berner's and Morris' future compensation and on the price at which other officers will be able to exercise stock options will result in actual or sizeable savings to the company; and by the terms of the settlement the stockholders may be assured that no further tender offers will be made without their approval. These gains are sufficient to justify the settlement of a case imbued with not inconsequential difficulties. In such circumstances, the court would not be justified in imposing on the parties, including Curtiss, the substantial burden of further litigation expense, although to say this is not to imply that the case appears to warrant further prosecution.

■ A word must be added as to the issue arising under Civil Rule 11. Since no allowances are to be requested in this Court, it is highly doubtful whether an infraction of the rule exists. However, as a matter of good practice in the exceptional circumstances of these companion cases, the court will retain jurisdiction so that it can examine such awards as may be made by the state court. This provision is, of course, not intended to imply any likelihood of disagreement with the state court nor any power on our part to review matters solely within its jurisdiction, but rather to fulfill the obligations which Rule 11 imposes on the judges of this Court. In this connection counsel for the parties to the suit are instructed to request the state court to indicate in any award it makes whether and to what extent any work performed by counsel in the federal court action was considered in granting allowances.

---

3. Plaintiff is represented in the instant case by the counsel referred to in the excerpt from Judge Wyatt's opinion.

Subject to the condition set forth above, the application to approve the stipulation of settlement is granted.

Submit order on notice.