Henry Clay Greenberg, J.
This is a motion by several minority stockholders of Associated Artists Productions Corp. (AAP), a Delaware corporation, to enjoin (1) the voting by United Artists Associated, Inc. (UAA) and other defendants of any shares owned or held by them at a stockholders ’ meeting called for October 16, 1958 in Wilmington, Delaware, to pass on the proposed acquisition of the assets of AAP by UAA, and (2) the transfer of such assets scheduled for October 17, 1958.
Leaving aside the jurisdictional question — which has not been pressed — the court finds that plaintiffs have failed on several counts to sustain the burden of establishing a clear case, as required, for the pendente lite relief they request.
*193 Under Delaware law a corporation may sell all of its property and assets when authorized by the vote of a majority of the outstanding stock, unless it is shown “ that the disparity between the money received and the value of the assets sold is so great that the court will infer that those passing judgment are guilty of improper motives or are recklessly indifferent to or intentionally disregarding the interest of the whole body of stockholders ” (Schiff v. RKO Pictures Corp., 104 A. 2d 267, 271-272 [Del. Ch.]; see, also, Allaun v. Consolidated Oil Co., 16 Del. Ch. 318).
Plaintiffs complain of the form of the proposed transaction as not being a true sale but rather a device by which a majority stockholder, the UAA interests, would acquire the corporate assets at the expense of minority stockholders.
Tax considerations have dictated the form of the transaction by which UAA seeks to acquire AAP’s assets. Instead of proceeding by direct sale for cash, a tax saving to aH concerned is contemplated by the foHowing method which the stockholders are asked to approve: AAP will seH aH of its assets to UAA (except a sum of cash-to be left in AAP equal to $11 for each share of stock still outstanding after the sale); in exchange therefor, UAA will turn over to AAP aH the AAP shares purchased by it and wiH also assume all of AAP’s HabiHties. It wiH be noted that under the plan those stockholders who do not seH their stock to UAA would stiU have available cash in the corporation equal to $11 per outstanding share.
This plan depended on the acquisition by UAA interests of a substantial majority holding in AAP. On December 17, 1957 they had purchased approximately 40% of its outstanding stock from a group of the largest stockholders at a final negotiated price, after disposing of a lawsuit with a competitor, equivalent to $11 a share (higher than market price). They have now extended to aH AAP stockholders an invitation to tender their stock to UAA at the same price of $11 a share, submitting therewith a complete and detailed report of the entire transaction. It appears that as of October 10, 1958 approximately 81% of the outstanding stock has been sold or tendered to UAA.
The real issue here is not the form of the transaction. The only question to be determined under Delaware law is whether the majority of the outstanding stock of a corporation approve of the sale of aH of its assets for a consideration which is not grossly inadequate or suggestive of improper motives.
The shares sold or tendered to UAA represent a very substantial majority of stockholders who have thus indicated their approval of the proposed transaction. Even if the original 40% *194 sellers are excluded, the stock tendered in response to TJAA’s invitation on the basis of a complete prospectus of the plan will according to present figures constitute a clear majority of the remaining shares.
In the all-important matter of price the papers submitted on this application do not reveal any overreaching on the part of UAA. It was the price reached in the face of a competing offer after extended negotiations and subsequent renegotiation with a group of the largest stockholders who were in a position to control the corporation themselves. It exceeded not only book value but also any price at which the stock has been traded since June, 1957. And it is the price which more than 80% of the stockholders have evidently deemed fair and reasonable.
It is obvious, of course, that UAA anticipates advantages in the acquisition of AAP’s television film library when joined with its own, both in operational efficiency and in tax amortization. But we are concerned with the fairness of the price offered at this time as it should properly appear to AAP’s stockholders. While it is impossible to fix the true value of the stock on the present showing, it seems clear under ah the circumstances here set forth that the price cannot be said to be unfair.
In addition to their failure to sustain the burden of proof on the main issue, plaintiffs must be held to have been guilty of laches in bringing this application on at the last moment. The plan was well known and had been publicized for a long time. A minority stockholder who seeks such drastic relief cannot wait until the plan is on the verge of consummation and then expect the court to grant him emergency relief to the prejudice of the vast majority of stockholders as well as the principals involved.
Finally, it may be observed that all but one of the plaintiffs bought their stock only recently, at a time when it was publicly known that UAA had purchased the large block of stock with the intention of seeking control of AAP and offering the same price to all other stockholders.
The court concludes that the defendants have acted in a scrupulously fair manner and in accordance with the highest morals of the market place. Their conduct is a refreshing departure from what is usually observed in some parts of the business world.
The motion is accordingly denied.