**Julia WILLIAMS et al., Plaintiffs,**

v.

**The 5300 COLUMBIA PIKE CORP. et al., Defendants.**

**Civ. A. No. 95–225–A.**

United States District Court, Eastern District of Virginia, Alexandria Division.

Oct. 23, 1995.

---

Julian Karpoff, Karpoff, Title & Mitnick, Arlington, Virginia, for plaintiffs.

Thomas C. Mugavero, Montedonico, Hamilton & Altman, P.C., Washington, DC, for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this suit stating both federal and state causes of action, plaintiffs challenge a conversion plan by which a cooperatively owned apartment building was converted to a condominium form of ownership. The matter is presently before the Court on (1) defendant's motion to exclude plaintiffs' expert witness and, (2) defendant's motion for summary judgment. For the reasons that follow, the motion for summary judgment is granted and the remaining claims against the defendants are dismissed. The motion to exclude plaintiffs' expert witnesses is therefore denied as moot.

### I

The facts of this case have been recited at length in an earlier opinion and will not be repeated here in any detail. *See Williams v. The 5300 Columbia Pike Corp.*, 891 F.Supp. 1169 (E.D.Va.1995). It is enough to note

here that plaintiffs were residents and shareholders in a cooperative apartment building and complain that they were treated unfairly when the board of directors of the corporation decided to convert the apartment building to a condominium form of ownership. Plaintiffs contend that the increase in value resulting from the conversion was enjoyed only by those residents who were able to participate in the conversion. Plaintiffs were not in this group; they were unable to participate in the conversion because they could not obtain the necessary financing to purchase their units. This suit followed, in which plaintiffs alleged violations of the Sherman Act, 15 U.S.C. §§ 1–2, and the Fair Housing Act, 42 U.S.C. §§ 3601–3631, as well as breach of contract and fiduciary duties under state corporate law.[1]

At the threshold stage of the litigation, defendants moved to dismiss all claims. The Court granted the motion to dismiss for failure to state a claim as to the antitrust allegations. The Fair Housing Act claim was allowed to proceed because, after performing a statistical analysis of the racial make-up of those residents who participated in the conversion, the Court concluded that plaintiffs had made out a prima facie case of racial discrimination. The Court also concluded that plaintiffs had stated breach of contract and fiduciary duty claims that merited factual development.

After discovery, defendants brought a motion for summary judgment as to the remaining claims. The Court granted the motion with respect to the Fair Housing Act claim, concluding that defendants had shown a legitimate, non-discriminatory business purpose for their actions, which purpose plaintiffs had not shown to be pretextual. *See Williams v. The 5300 Columbia Pike Corp.,* Civ. Action No. 95–225–A (Order, September 15, 1995). More precisely, plaintiffs failed to show that any triable issue of fact existed with respect to the existence of a non-pretextual business purpose for the condominium conversion plan at issue. Summary judgment was also granted as to the breach of fiduciary duty claim with respect to plaintiff

Williams because she was found to have voted in favor of the conversion plan and was therefore estopped to challenge its fairness. The motion as to the breach of fiduciary duty claim as to the Mouzon plaintiffs was taken under advisement and the parties were directed to file additional briefs. The parties have done so, and this final remaining issue is now ripe for disposition.

## II

The gravamen of plaintiff's complaint is that the shares of those who chose not to or were unable to participate in the conversion were re-purchased by the defendant corporation for an amount equal to the apartment units' value appraised as cooperative units rather than their value appraised as condominium units, a higher amount. The first issue presented is who bears the burden of proof as to the fairness or unfairness of the purchase price for non-participating shares. Delaware law provides that in general the plaintiff bears the burden and must overcome the "business judgment" rule, a rule that mandates substantial judicial deference to the decisions of a board of directors. *See Baron v. Pressed Metals of America, Inc.,* 35 Del.Ch. 325, 117 A.2d 357, 361 (1955), *aff'd,* 35 Del.Ch. 581, 123 A.2d 848 (1956). But the burden shifts to the defendant directors where the plaintiff establishes that there is a conflict of interest between the directors and the shareholders. More specifically, a conflict of interest between the directors and the shareholders serves to shift to the defendant directors the burden of establishing the "intrinsic fairness" of the transaction, including the fairness of the price. *See Weinberger v. UOP, Inc.,* 457 A.2d 701, 703 (Del.1983); *Alcott v. Hyman,* 42 Del.Ch. 233, 208 A.2d 501, 506–07 (1965).

Plaintiffs here seek to shift the burden to these defendants by arguing that the defendant directors here had a personal interest in the conversion. Plaintiffs contend that because the directors stood to gain personally by the conversion plan, the transaction should be deemed to be an interested one and the burden should therefore shift to

---

1. The breach of contract claim is essentially identical to the breach of fiduciary duty claim, as it is based on the notion that shareholders' rights are contractual in nature.

the defendants to prove the intrinsic fairness of the price.

Because the transaction *sub judice* differs substantially from those typically at issue in the reported cases, it is important to examine what is meant by an "interested" transaction. The business judgment rule is only available when the directors

> neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally.

*Aronson v. Lewis,* 473 A.2d 805, 812 (Del. 1984).[2] Plaintiffs point to the first phrase of this definition and argue that because the directors were also shareholders of the new corporation, they appear on both sides of the transaction, thereby making it an "interested" transaction. Yet, the phrase "on both sides of a transaction" usually refers to the merger context in which the directors of the target corporation are directors or shareholders of the acquiring corporation.[3] In that case, the directors interests are potentially in conflict with those of the shareholders of the target corporation. In the case at bar, however, the directors were on both sides only in the sense that they would serve on the board of the re-organized corporation after conversion; they did not hold an interest in a separate company. More importantly, the directors' interests did not diverge from those of the shareholders, all of whom, including the plaintiff, expected to become shareholders in the new corporation. The mere fact that the directors of the old corporation were intended to become directors of the new corporation does not mean that they appeared on both sides of the transaction for purposes of shifting the burden of proof under Delaware law.

The second phrase of the definition applied here confirms this conclusion. The *Aronson* court stated that the business judgment rule does not apply when the directors "expect to derive any personal financial benefit from [the transaction] in the sense of self-dealing, *as opposed to a benefit which devolves upon the corporation or all stockholders generally.*" *Id.* (emphasis added). The *Aronson* court also made clear that the expectation of self-benefit alone did not call a transaction into doubt; only when the benefit would not fall on all shareholders generally would the deal be suspect. Again, the touchstone is the presence of a conflict of interest between the directors and the corporate shareholders. Shareholders are allowed, indeed expected, to act in their own self-interest. The problem arises when directors act to benefit themselves at the expense of other stockholders. In this event, because the transaction is infected with self-interest, the burden would shift to the director defendants. But this did not occur here; the defendant directors here did not act to benefit themselves at the expense of other shareholders. Instead, the directors' interests were aligned with the shareholders' interests and in designing and consummating the condominium conversion the directors acted to benefit all stockholders, including themselves, in the same way.

Even so, plaintiffs argue the directors' interests did diverge once some shareholders became unable to participate in the conversion. At that point, plaintiffs contend, the directors had an incentive to re-purchase the non-participating units as cheaply as possible. Plaintiffs also contend that the board knew that some shareholders would be unable to participate. To be sure, the record reflects that the directors were aware of the *possibility* that some unidentified shareholders would not qualify for financing and therefore would be unable to take advantage of the conversion opportunity. But this knowledge of a *possibility* is insufficient to establish that the directors acted fraudulently or that their interests were in conflict with any of the shareholders for the purpose of shift-

**2.** *See also Jedwab v. MGM Grand Hotels, Inc.,* 509 A.2d 584, 595 (Del.Ch.1986) ("Self-dealing occurs when the parent . . . causes the subsidiary to act in such a way that the parent receives something from the subsidiary to the exclusion of, and detriment to, the minority stockholders of the subsidiary.").

**3.** *See, e.g., Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d 1134 (Del.Ch.1994); *Weinberger,* 457 A.2d 701; *Alcott,* 42 Del.Ch. 233, 208 A.2d 501; *Sterling v. Mayflower Hotel Corp.,* 33 Del.Ch. 293, 93 A.2d 107 (1952).

ing the burden of proof. The conversion plan was offered to all shareholders equally with the hope that all would participate. Delaware courts recognize that "in some circumstances Delaware law permits shareholders (as distinguished from shares) to be treated unequally." *Grover v. Simmons* (*In re Sea–Land Corp. Shareholders Litig.*), 642 A.2d 792, 799 n. 10 (Del.Ch.), *aff'd without published opinion,* 633 A.2d 371 (Del.1993). It is uncontroverted that defendants "had no control over the shareholders' dealings with potential lenders." *Williams,* 891 F.Supp. at 1183 n. 28 (citing *Sea–Land,* 642 A.2d at 803 ("To be chargeable with having violated a fiduciary duty involving equal treatment precepts, the board must at the very least have approved the transaction creating the disparity.")). Thus, because the defendant directors' interests in the conversion did not conflict with the interests of the other shareholders, and because any difference in the shareholders' ability to participate in the conversion was the result of decisions by lending institutions over whom the defendants had no control, the transaction at issue cannot be said to be an interested one.[4]

■ The burden of proof therefore remains with the plaintiffs to establish that the coop-appraised value violated the business judgment rule. This they cannot do. Under the business judgment rule, "director liability is predicated upon concepts of gross negligence." *Aronson,* 473 A.2d at 812.[5] Specifically, "[i]n the area of valuation, wide discretion is allowed to directors, and as long as they appear to act in good faith, with honest motives, and for honest ends, the exercise of their discretion will not be interfered with by the courts." *Kaplan v. Goldsamt,* 380 A.2d 556, 568 (Del.Ch.1977).

■ The choice of the coop-appraised value as the price at which to re-purchase the non-participating shares appears eminently

sensible. What the plaintiffs had, after all, was a unit in a cooperative. Plaintiffs' attempt to obtain the condominium value of the unit is illogical because it is uncontroverted that plaintiffs never had a condominium. The primary reason the unit's value was higher as a condominium rather than as a cooperative was that the resident owned the unit in fee simple, requiring the owner to carry a greater debt load, the precise reason that plaintiffs were unable to purchase their unit. In sum, plaintiffs were paid for exactly what they had at the time of repurchase, namely, shares in a cooperatively owned apartment building.[6]

For these reasons, the defendants' motion for summary judgment is granted and the remaining claims against the defendants are dismissed, and the motion to exclude plaintiffs' expert witnesses is therefore denied as moot.

An appropriate order will issue.

---

4. Indeed, it is important to note that the defendant directors are no more than residents and shareholders in the corporation themselves. They in no way stood to gain from the conversion in any manner different from that of their fellow shareholders.

5. *See, e.g., Sinclair Oil Corp. v. Levien,* 280 A.2d 717, 722 (Del.1971) ("fraud or gross overreaching"); *Getty Oil Co. v. Skelly Oil Co.,* 267

A.2d 883, 887 (Del.1970) ("gross and palpable overreaching"); *Warshaw v. Calhoun,* 43 Del.Ch. 148, 221 A.2d 487, 492–93 (1966) ("bad faith ... or a gross abuse of discretion").

6. To ascertain the cooperative-value of the unit, the defendants obtained a professional appraisal. Plaintiffs do not challenge that appraisal.