REPUBLIC NATIONAL LIFE
INSURANCE COMPANY and
Stanley Ferber

v.

Theodore P. BEASLEY et al.

REPUBLIC NATIONAL LIFE
INSURANCE COMPANY and
Lola Flamm

v.

Theodore P. BEASLEY et al.

Nos. 74 Civ. 1294 and 3785(MP).

United States District Court,
S. D. New York.

Feb. 24, 1977.

**660**

Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., for Republic Nat. Life Ins. Co.; Mark Martin, John H. Marks, and Hal Sanders, Dallas, Tex., of counsel.

Kass, Goodkind, Wechsler & Gerstein, New York City, by Stuart D. Wechsler, Robert S. Schachter, New York City, liaison counsel, for plaintiffs.

Milberg & Weiss, New York City, by Lawrence Milberg, New York City, for Ferber.

Prins, Flamm & Susman, Ltd., Chicago, Ill., for Flamm; Arthur T. Susman, Robert D. Allison, Chicago, Ill., of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, by Roger Boyle, III, Michael J. Levin, New York City, for T. P. Beasley, R. R. Beasley, Brady, Skelton, Smoot & Stanley.

Cahill, Gordon & Reindel, New York City, for Peat, Marwick, Mitchell & Co.; William E. Hegarty, Michael P. Tierney, New York City, of counsel.

Arnold & Porter, Washington, D. C., for Westheimer, Fine, Berger & Co.; Werner J. Kronstein, Robert D. Rosenbaum, Washington, D. C., of counsel.

Johnson, Guthrie, Billings & Nash, Dallas, Tex., for Thomas G. Nash, Jr.

Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for J. D. Francis, Winstead and Gragg.

Joel T. Williams, Jr., pro se.

Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, Tex., for W. L. Pickens; Robert G. Vial, Dallas, Tex., of counsel.

POLLACK, District Judge.

A settlement of two derivative stockholders' suits has been negotiated and the Court is called upon pursuant to Rule 23.1 Fed.R. Civ.P., to determine its fairness, reasonableness and adequacy. The nominal party corporate defendant Republic (Republic National Life Insurance Company) on whose behalf the suits were brought, was realigned as a plaintiff in September 1976 for pretrial purposes. Independent Special Counsel for Republic negotiated the settlement after the realignment.

In addition to the settlement proposed, Special Counsel have moved on instructions of the Board of Directors to dismiss the claims asserted against the outside directors and defendant Stanley in the service of the best interests of Republic.

The two suits before the Court are the remainder of 17 private actions including individual, class and derivative stockholder claims by holders of Republic stock acquired in three separate mergers or through market purchases and class or derivative claims asserted by holders of the stock of Realty Equities Corporation of New York (hereafter Realty). The other Republic cases were terminated heretofore by settlements and in one derivative case by a discontinuance following sale of the plaintiff's stock in Republic. The individual claims were disposed of between the parties and the class claims against Republic were settled with the approval of the Court on notice to stockholders. During the pendency of the actions Realty became insolvent and the class actions of stockholders against Realty have been terminated by stipulations.

The Special Counsel for Republic who presented the settlement and the motion to terminate the actions against the outside directors and defendant Stanley have functioned for Republic since 1974, having been appointed after the questioned investments complained of herein came to light. In 1974, following an investigation, the Texas Commissioner of Insurance placed Republic under his supervision. Shortly thereafter, the United States Securities and Exchange Commission (SEC) commenced proceedings to place Republic in receivership and sought injunctions against Republic and Realty Equities Corporation, their directors, officers, accountants and others. These agency actions precipitated the resignations of nine of the 12 members of Republic's Board of Directors. The nine were replaced on June 24, 1974 by six independent directors who had no connection with any of Republic's transactions made theretofor. The new directors thereafter constituted a majority of

the Board and its Executive and Finance and Investment Committees. The new Board thereupon selected Special Counsel to act for Republic in the pending litigations and the matters connected therewith. The Special Counsel took the lead in the presently pending cases after the realignment in September 1976 and shortly thereafter successfully negotiated and arranged the settlement which is now before the Court.

Due and timely notice to all of Republic's stockholders was given, and a hearing on the settlement and dismissals has been duly held at which all who desired it were given an opportunity to be heard. Proofs and argument were adduced and decision was reserved.

The settlement carries the endorsement of the Republic Board of Directors, its Special Counsel and the Texas Commissioner of Insurance, who supervises Republic's affairs. The plaintiff Ferber who brought the New York constituent suit and Mr. Wechsler, the Court appointed liaison counsel for the plaintiffs who has functioned throughout in that capacity through the consolidated litigations, have also recorded their approval. The sole objector is Lola Flamm, the plaintiff in the Texas suit.

*The Proposed Settlement*

As originally agreed upon, the settlement provided for payments to Republic from three sources:

(1) Theodore P. Beasley will pay to Republic within five days after approval of the settlement the sum of $1,550,000.00 in cash. The agreement stipulated that this payment is being made by Theodore P. Beasley in behalf of himself, and the other members of the Finance and Investment Committee, namely, Ronald Rex Beasley, Clarence Skelton, Robert P. Brady, Samuel P. Smoot, W. N. Stannus, and Thomas G. Nash, Jr., and in behalf of two investment officers, Messrs. Ervin Atkerson (deceased) and A. E. Streitmatter (deceased), who were also on Republic's Board during part of the relevant period. (The deceased investment officers were never served with process in any of these suits but Republic may have actionable claims for contribution and indemnity against their estates.) In consideration for Theodore Beasley's payment, the settlement provides for releases of those named above from any claims or causes of action Republic may have against them as a result of transactions between Republic and Realty prior to February 7, 1974, and for dismissal of all pending claims against them, including its claims for contribution or indemnity.

(2) PMM (Peat, Marwick & Mitchell) will pay $399,000.00 in cash to Republic within five days after the approval of this settlement. In consideration for this payment, Republic will release PMM from all claims it has against it arising out of or in any way connected with auditing services and reports rendered by PMM to Republic prior to February 7, 1974, and will dismiss all claims pending against PMM, including claims for contribution or indemnity.

(3) WFB (Westheimer, Fine & Berger) will pay $40,000.00 in cash to Republic within five days after approval of this settlement. As consideration for the payment, Republic will release WFB from any claims it may have against it as a result of transactions between Republic and Realty before February 7, 1974; and Republic will dismiss all claims against WFB, including claims for contribution and indemnity.

*Objections to Settlement*

The objector to the settlement asserts that the first two branches of the settlement stated above are just too low and should be disapproved despite the temptation to clear the Courts of litigation. Neither Flamm nor anyone else asserts objection to the third branch, the WFB aspect of the settlement. Objector Flamm asserts that some of the Republic directors (or former directors) who would be relieved of further litigation in the first branch of the settlement have failed to present reliable information which justifies their complete lack of contribution thereto, and that Theodore Beasley, Rex Beasley, Stannus and the Atkerson Estate have means which warrant either payment of additional consideration

or further pursuit of the litigation against them. The objector does recognize that a settlement lower than the amount potentially recoverable in a lawsuit may be justified by the costs and risks of further litigation and the extent of the assets available to be pursued.

The objector further asserts as to the second branch of the settlement that PMM's breach of duty warrants a greater recovery from it. She says that by reason of its "inept" conduct and its knowledge of the problems that Republic faced, its contractual obligation to audit Republic's finances and investments in sufficient detail was breached.

The objector argues that the claim of the plaintiffs under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder, is a very minor part of the claims that Republic has against its directors and against PMM. The claim against the directors is, she asserts, basically for breach of fiduciary duty by allegedly permitting a high concentration of Republic's assets to be invested in Realty. The objector acknowledges, and the Court has been furnished with no evidence to the contrary, that no director profited personally from any transaction complained of. As against PMM, the objector classified the claim of Republic as a simple breach of contract action.

*The Matters Complained of*

Briefly, the complaints of the stockholders allege that the defendants made or aided and abetted in the making of unsound and improper investments by Republic in Realty and its affiliates and subsidiaries, and thereafter concealed the fact that those investments were failing. They charge that Realty was unable to meet its obligations, that the defendants falsely created the illusion that Realty was sound by making additional investments in Realty for little or nothing in return, and that Republic was caused to make excessive mortgage loans on Realty's properties and buy grossly overvalued property from Realty. The complaints allege that these transactions were in violation of the federal securities laws and constituted breach of fiduciary duty and waste and mismanagement of Republic's assets. Demand is made for compensatory damages.

A chronology of the transactions referred to by the complaints is generally as follows.

Between January 1968 and April 1970 Republic invested approximately $17-million in Realty and $4–6 million in Realty's affiliate FNR (First National Realty and Construction Corporation).* Republic's net investment in Realty's enterprises stood at $18,500,000.00 in 1970. By September, Republic was additionally holding over $30,-000,000.00 in mortgages on properties owned or managed by Realty.

In September 1970 Republic arranged a $12-million loan for Realty at Mercantile National Bank of Dallas under which Republic agreed to a take-out of the bank in two installment payments to be made on March 15, 1971 and September 17, 1972. Realty agreed to pay a fee of up to $60,-000.00 to Republic for arranging the loan.

In December 1970 Republic made loans to Realty subsidiaries or affiliates aggregating $23,000,000.00 and purchased mortgages from Realty aggregating $3,235,000.00.

In 1971 Realty arranged to sell certain debentures of Investors Funding Corporation of New York (IFC) to Republic for $3,000,000.00 of which $1,000,000.00 went to Realty. In the same year Republic loaned $4,000,000.00 to a subsidiary of Realty which held leasehold interests in Washington, D.C. area residential properties. More than half of this amount was paid back to Republic to pay interest and reduce the principal on a loan made to a wholly-owned subsidiary of Realty in December 1970.

In August 1971 Republic loaned an additional $5,000,000.00 to the same subsidiary mentioned above. In October 1971 a Realty affiliate borrowed $6,000,000.00 from Re-

---

* Realty, its subsidiaries and affiliates will hereafter for convenience be referred to as "Realty".

public, $4,000,000.00 of which was used by Realty to repay obligations due Republic on loans made in December 1970. Also in October 1971, Republic purchased for $8,000,000.00 a debenture of a shell corporation, the money finding its way to Realty for Realty assets at prices usually stepped up over cost by appraisals.

Late in 1971 the unsecured debentures of Realty's affiliates or subsidiaries held by Republic to evidence the loans were exchanged for tracts of raw land acquired by Realty's subsidiaries. The land was valued by appraisals at figures above its contemporaneous cost to Realty and was mortgaged or sold to Republic at multiples over Realty's cost. The money so obtained from Republic was used in part to pay for Realty's purchases of the property so mortgaged or sold to Republic, and in part for Realty's corporate purposes. Those transactions included

1. Adirondacks property bought by Realty for $3,150,000.00 and mortgaged to Republic for $13,450,000.00;

2. West Palm Beach property bought by Realty for $615,000.00 and mortgaged to Republic for $1,400,000.00;

3. Arizona property bought by Realty for $2,400,000.00 and simultaneously resold to Republic for $5,200,000.00;

4. Harriman, New York property bought by Realty for $1,562,000.00 and sold to Republic simultaneously for $4,400,000.00;

5. Yonkers, New York property bought by Realty for $365,000.00 and simultaneously resold to Republic for $550,000.00; and

6. Republic made a direct loan to a Realty subsidiary, a New York sanitarium, of $4,100,000.00.

Through the above transactions Realty received $31,000,000.00 from Republic of which Realty used $8,000,000.00 to buy the real estate in question, retained $2,500,000.00 for its corporate purposes and paid an unspecified sum to Republic for interest due on other mortgages held by Republic. More than $20,000,000.00 was used by Realty to purchase debentures held by Republic and issued by Realty affiliates and subsidiaries.

In 1972, Realty bought a shopping center in Levittown, Pennsylvania for about $2,300,000.00 and obtained a $4,000,000.00 mortgage from Republic on it. $1,500,000.00 of the proceeds came back to Republic as repayment of mortgages it held on Realty properties. In the same year a second shopping center at Levittown was bought at a cost of $1,000,000.00 over existing mortgages; a loan was obtained simultaneously from Republic of $3,000,000.00 pursuant to a leasehold mortgage; and two-thirds of that amount was used by Realty to buy back its notes and mortgages held by Republic.

One additional loan—apparently the last of the investments in Realty enterprises—was made on January 3, 1973 by Republic in the amount of $1,500,000.00, secured by mortgages on five hotels. Almost half of the money being loaned was then reloaned by the borrower to Realty.

All of the foregoing transactions together represented over twenty percent of Republic's portfolio of investments and exposed Republic to possible losses thereon of $45,000,000.00, according to an estimate made in 1975.

The Finance and Investment Committee and the investment officers of Republic approved the above transactions.

*Legal Proceedings*

The Republic-Realty transactions brought on a wave of administrative and enforcement proceedings by the SEC and the Texas Insurance department and subsequent court cases by stock purchasers and stockholders.

On February 7, 1974 the SEC ordered suspension of trading in Republic's capital stock in the Over-The-Counter market because of the lack of accurate and adequate information available to the public concerning the company's operations and in current and past financial statements of the company.

On February 22, 1974, the Commissioner of Insurance of the State of Texas issued an order placing Republic in a state of supervision.

In March 1974, the Securities and Exchange Commission filed an enforcement action in the Southern District of New York against Republic, seven of its officials and its auditor, PMM, as well as against Realty, two of its officials and its auditor, WFB, and against two other individuals.

These agency actions were followed on June 24, 1974 by the resignations and change in the composition of the Board of Directors of Republic previously mentioned.

In July 1974, the newly-constituted Board, in conjunction with the Commissioner of Insurance, retained the Dallas law firm of Strasburger, Price, Kelton, Martin & Unis to serve as Special Counsel to Republic to investigate and, if appropriate, to take legal action with respect to the conduct of any or all individuals, partnerships or corporations in connection with the transactions occurring between Realty and Republic prior to February 7, 1974.

The 17 private stockholder actions were filed in a steady procession in 1974 in the federal district courts of Texas, New York and Tennessee. The Multidistrict Panel transferred all the suits to the Southern District of New York for pretrial purposes and placed the management of the cases, including the SEC enforcement suit, with this Court pursuant to 28 U.S.C. § 1407. For convenience in conducting the pretrial proceedings, the cases were consolidated and an amended consolidated complaint embracing all the private claims was ordered and filed. Liaison counsel was appointed to act on behalf of all the private plaintiffs and in addition lead counsel were appointed for each of the categories of litigants. Classes were duly certified for the class claims and class representatives were named.

Extensive discovery was conducted on behalf of the plaintiffs including massive documentary discovery and approximately 72 separate oral depositions were taken in Texas, New York and elsewhere.

Numerous interim applications were made to the Court to guide and control the pretrial proceedings and the Court was kept closely and fully informed of all proceedings and progress in the cases.

The receivership sought by the SEC was denied and that suit ultimately ended on entry of appropriate injunctions on consent. The supervision of Republic's affairs by the Commissioner of Insurance of the State of Texas has continued throughout to this date.

Republic has heretofore paid amounts totalling in excess of $12,000,000.00 to accomplish the settlement of the claims brought against it by purchasers of its stock on the open market and by those persons who acquired its stock in connection with the three mergers mentioned above.

The actions against Republic, previously settled, were based primarily on allegations that Republic's financial statements for the years 1970, 1971 and 1972 were materially false and misleading in the following respects: the financial statements overstated the carrying value of certain of Republic's assets for the years in question; the financial statements reported as income the monies received from Realty-related companies, from funds originally generated by Republic's placing additional mortgage loans on properties owned or controlled by Realty or Republic's renewing existing mortgages for an increased amount sufficient to cover accrued principal and interest; the financial statements failed to disclose Republic's concentration of investment in Realty-related entities; and the financial statements failed to disclose and write down problem real estate investments generally.

*The State of the Evidence and Ability to Pay*

The evidence available for the trial of the derivative claims has been set out in detail in the statement filed in support of settlement by Special Counsel, to which reference is made. That statement presents a careful, detailed, straightforward analysis of

the strengths and weaknesses of the respective cases against the various defendants and is incorporated herein by reference.

Special Counsel has weighed the possibilities of success as against the Republic inside director defendants and has assayed the ability of each to respond to a judgment. Except for the Beasleys, the Estate of Erwin Atkerson and to a minor degree, Messrs. Skelton, Stanley and Stannus, the ability of the Republic inside director defendants to pay a judgment is asserted to be insufficient to warrant further litigation expense, time and inconvenience to Republic. As to the excepted group, while their assets are significant in amount, the cost and speculative risk of pursuing claims against their ascertained assets outweighs the considered prospects for a recovery greater than the settlement offer, according to Special Counsel.

The objector does not take issue with the recommendation that a settlement be effected. She contends, however, as previously indicated, that the amount of the settlement on behalf of the Beasleys is inadequate because it does not sufficiently tap their assets, and that the Atkerson Estate should not be freed without some adequate payment in settlement.

The Special Counsel has similarly reported in detail with respect to the claims against PMM and the state of the evidentiary and legal support therefor and prospective defenses thereto. There is no question of ability to pay raised in connection with this branch of the settlement.

PMM is charged with having breached its contract obligations to Republic and with having made allegedly inadequate audits of Republic's affairs and having thus aided and abetted Republic's dissemination of false and misleading financial statements. It certified the financial statements of Republic for 1970, 1971 and 1972, each time issuing a clean opinion. It did not require any disclosure therein of Republic's investment in Realty and permitted recognition of income derived from Republic's own funds which were channelled back into Republic by Realty, according to the contentions of the plaintiff stockholders.

Thus, Republic allegedly is entitled to assert liability of PMM for contribution and/or indemnity for the payments which Republic made in the settlement of the class actions.

Here again the strengths, weaknesses and value of the claims and the purported defenses thereto are detailed carefully and constructively in Special Counsel's filed statement, which concludes that the settlement should be accepted by Republic. Reference thereto for the details is hereby made and the statement is hereby incorporated herein.

The objector again seemingly accepts the notion that a settlement, if adequate and reasonable, is appropriate. However, she questions the propriety of the calculation of monetary accountability as set forth by Special Counsel.

Independent counsel have calculated that 64% of the open market class shares were purchased after PMM certified the 1970 financial statement and that liability of PMM for contribution is about $900,000.00. Consequently, the settlement offer negotiated with PMM represents approximately 45% or more of the total potential recovery from them, which independent counsel consider a fair compromise in light of the strengths and weaknesses of Republic's case against PMM.

Little need be said about the settlement with WFB. No one has voiced any objection thereto. The Special Counsel has in this connection again given the Court the benefit of its independent scrutiny of the claims against WFB, the evidentiary and legal support therefor and the probable defenses thereto.

The Republic claims against WFB are based on WFB's audits of Realty's financial statements for the years 1971 and 1972. The theory of liability of WFB is that Republic was damaged in reliance on Realty financial statements through losses incurred on investments in Realty securities.

In proposing the settlement with the "inside" directors, Special Counsel have also moved for a dismissal of the claims that have been asserted against the "outside" directors and defendant Stanley. They say:

> After examining and evaluating the respective claims which Republic has in respect to various defendants in this litigation, the undersigned reported its recommendation to Republic's Board of Directors, *who have directed* the undersigned to proceed with this Motion to Dismiss on the ground that the best interests of Republic would be served by dismissing—[the outside directors and Neal N. Stanley] . . . .

In the course of a fuller explanation of this recommendation and direction, the papers recite:

> The investigation conducted by Special Counsel has revealed that the outside directors were not on either Republic's Executive Committee or its Finance and Investment Committee, nor were they involved in the day-to-day investment operations and management of the Company. With the exception of J. D. Francis, there is no direct evidence that any of these directors were aware of Republic's investments in Realty-related entities subsequent to September 1970 . . . .
>
> \*    \*    \*    \*    \*    \*
>
> Thus, there is little evidence to support a case against the outside directors for breach of fiduciary duty.

On the other hand, liaison counsel, who has otherwise approved the settlement, stated before the amendments thereto hereinafter mentioned, that the actions should not be discontinued against the outside directors and Stanley. He noted that Stanley had signed Republic's 1970 reports; that Stanley was named as a defendant by the SEC in its injunction suit; and that Stanley allegedly was not candid in his testimony before the SEC and in discovery proceedings herein. Liaison counsel stated that he was not familiar with Stanley's financial condition but lack of means could be the only permissible reason for releasing him.

As to the outside directors, liaison counsel called attention to the absence of discovery concerning their financial means and the alleged absence of notice to shareholders that the settlement involved those individuals. He indicated his opinion that at least some of those defendants could be successfully prosecuted.

### Amendments to Settlement

Since the close of the hearing on the settlement and responsive to objections voiced by liaison and objector's counsel that the settlement releases individuals able to pay without exaction of any contribution from them, Republic's Special Counsel negotiated and executed supplemental settlement agreements whereby Ronald R. Beasley will pay Republic $150,000.00, Clarence Skelton $2,000.00, W. N. Stannus $1,000.00, and each of J. D. Francis, J. Willard Gragg, Sam Winstead and W. L. Pickens will pay $5,000.00 and Neal L. Stanley will pay $2,000.00. Special Counsel filed a supplementary statement detailing the background, strengths and weaknesses of the claims relating to the above-named defendants and the considerations favoring acceptance of the proffered amounts.

Special Counsel has again confirmed the practical impossibility of obtaining any settlement contribution from and the dubious financial ability to respond to a judgment in any significant amount of the other parties to be released pursuant to the settlement agreement with Theodore P. Beasley, with the possible exception of the Estate of Ervin Atkerson. In the opinion of Republic's Special Counsel, the ability of the Atkerson Estate to contribute to a settlement in exchange for a release of Republic's claims against it is offset by alleged inability to secure a judgment against the Estate. Special Counsel base this opinion on the unlikelihood that a Texas jury could be persuaded to take property from the elderly widow Atkerson to give it to Republic, without overwhelming, irrefutable evidence of misconduct on the part of the decedent. They say that "Evidence of that kind does not exist in this case."

Furthermore, Special Counsel in their supplemental statement again say that the case against the outside directors is highly problematical; that only circumstantial evidence is available on the issues of both negligence and proximate cause; and that those defendants would additionally have in their favor a jury's natural propensity to favor an individual over a corporation in a derivative suit.

Republic continues to urge that the claims against Joel T. Williams, Jr. also be dismissed with prejudice. In Special Counsel's opinion, the case against Williams is extremely weak. Williams came on the Board as the result of a merger; the first Board of Director's meeting which he attended was December 20, 1971, almost a year after the Board was alerted to the Realty situation by the letter from Arthur Anderson & Co., the former accountants. Williams had no notice of any question of the accuracy of Republic's financial statements. There appears to be no evidence that Williams had any knowledge of the Realty transactions prior to their public disclosure and at that time Williams opposed the position taken by the other members of the Board on the Realty transactions.

*Approval of Settlement*

■ The role of the Court in passing upon the propriety of a settlement in a derivative action is to determine whether the proponents of the settlement have shown that it fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted. *Milstein v. Werner*, 57 F.R.D. 515, 525 (S.D.N.Y.1972); *Winkelman v. General Motors Corp.*, 48 F.Supp. 490, 493 (S.D.N.Y.1942).

■ To this end, the Court is required to reach " 'an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated' and 'form an educated estimate of the complexity, expense, and likely duration of such litigation . . . and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.' " *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972).

■ The role of the Court is, however, "limited to the extent that its business judgment is not to be substituted for that of the parties who worked out the settlement[;] . . . the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *Glicken v. Bradford*, 35 F.R.D. 144, 151 (S.D.N.Y.1964); *Trainor v. Berner*, 334 F.Supp. 1143, 1149 (S.D.N.Y. 1971). Moreover, because shareholder derivative litigation is " 'notoriously difficult and unpredictable,' " "settlements are favored." *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y.1973). *See also Josephson v. Campbell*, [1967–69] CCH Fed.Sec.L.Rep. ¶ 92,347 (S.D.N.Y.1969).

In the present case there seems to be a substantial likelihood of success against some, if not all, of the defendants. On the other hand, there do appear to be a number of not inconsequential legal, evidentiary, and tactical obstacles confronting plaintiffs.

For example, any tort or contract claim against PMM would be confronted by the defense that its conduct did in fact comply with generally accepted principles and that its conduct in any event is not actionable because Republic's officers and directors interfered with the performance of its duties. *See Shapiro v. Glekel*, 380 F.Supp. 1053 (S.D.N.Y.1974). Any 10b–5 claim against PMM would face the scienter requirement of *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

The claims asserted against Republic's directors would turn on the questions of valuation of Realty's property and the knowledge of those directors of an overvaluation. This issue of valuation is one upon which necessary expert opinion may be divided sharply, and proof on behalf of plaintiffs may be difficult to muster and present. Counsel claim to be faced with reluctance on the part of qualified appraisers to attack appraisals prepared by others within the profession. Moreover, since the appraisals challenged herein were prepared years ago, any expert would face the difficult task of valuing the properties as of a prior date.

The absence of any objection on the part of any interested party herein underscores the acceptability of the modest settlement with WFB recommended by the independent reviewers of the settlement, the Special Counsel, Republic's independent board majority, the Texas Commissioner of Insurance and the liaison counsel for plaintiffs in the consolidated proceedings. WFB was examined extensively in the SEC proceedings and those examinations were part of the record and background of the information on which the Special Counsel made their independent judgment and recommendation for settlement. Suffice it to say that the Court finds that the amount of the settlement with WFB falls within the zone of fairness and adequacy and is reasonable in the circumstances.

Due consideration must also be given to the fact that no defendant herein profited personally from the transactions complained of, and to the possibility that the substantial stock holdings of the Beasley family might furnish them with a powerful trial argument that they had no incentive to breach their fiduciary duty or damage Republic to the detriment of their personal stake in the corporation. Such considerations might well appeal to a jury and influence it to reject the claims of breach of fiduciary duty made against Republic's directors and find instead an exercise of honest and informed, although mistaken, judgment.

Another factor relevant to a full assessment of the probabilities of ultimate success should this case be litigated is the extent of the financial means and solvency of the defendants. *See Cohen v. Young*, 127 F.2d 721 (6th Cir. 1942), *cert. denied*, 321 U.S. 778, 64 S.Ct. 619, 88 L.Ed. 1071 (1944). Evidence adduced by the proponents of the instant settlement indicates that in light of the limited means of Nash, Smoot, Skelton, Brady, and the Estate of Streitmatter, continued litigation against them would be unlikely to result in a substantially greater recovery than the amounts of the contributions to the settlement offered on their behalf.

■ In evaluating the proposed settlement, the Court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion. *Milstein v. Werner, supra*, 57 F.R.D. at 524; *Stull v. Baker*, 410 F.Supp. 1326, 1332 (S.D.N.Y.1976).

[T]he determination of what amount of money constitutes a fair settlement is not a matter of mathematical science. On the one hand perhaps plaintiff's counsel have obtained more . . . than a jury would award; on the other hand, it may be less. The court is in no position to substitute its judgment for that of honest and competent attorneys, who . . . have made a determination that the settlement represents a fair and realistic appraisal of their clients' chances of ultimate success. *Siegel v. Realty Equities Corp.*, [1973] CCH Fed.Sec.L.Rep. ¶ 94,102 at 94,446 (S.D.N.Y.1973).

The present settlement (amended) and the dismissal of the suits against the outside directors and defendant Stanley have been recommended not only by Republic's Special Counsel, whose independence and expertise have not been questioned, but also by the Commissioner of Insurance of the State of Texas and the recommendations have been approved by resolution of the independent and disinterested members of Republic's board of directors who possess no disqualifying interest.

■ The business judgment of an independent, disinterested board of directors that settlement, or even dismissal without consideration, of a derivative action is in the best interests of the company and its shareholders is respected by the Courts. *Stull v. Baker, supra*, 410 F.Supp. at 1336. *See also Berger v. Dyson*, 111 F.Supp. 533 (D.R.I.1953). Good faith business judgment of an independent disinterested board of directors is appropriate ground for dismissal of derivative stockholder litigation. *Lasker v. Burks*, 404 F.Supp. 1172, 1179 (S.D.N.Y. 1975) (Werker, J.); *Goodwin v. Castleton*, 19 Wash.2d 748, 144 P.2d 725, 733 (1944). The good faith business judgment of di-

rectors that the best interests of the corporation dictate that alleged breaches of fiduciary duty should not be legally pursued directly or derivatively or that settlements for sums they deem adequate, fair and in the corporate interest should be accepted, is an exercise of the management powers of the board in respect of the corporate assets traditionally entrusted to the control of the board of directors by the stockholders for the orderly administration of the corporate affairs.

■ In *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 343, 56 S.Ct. 466, 481, 80 L.Ed. 688 (1936) the doctrine is clearly taught that no matter how clear liability appears in the view of the stockholder:

> [Stockholders] cannot secure the aid of a court to correct what appear to them to be mistakes of judgment on the part of the officers . . . This rule applies . . . where the mistake alleged is the refusal to assert a seemingly clear cause of action . . . .
>
> (Brandeis, J. concurring).

In *United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 (1917) Mr. Justice Brandeis explicated the doctrine as follows:

> Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management, and is left to the discretion of the directors . . . . Courts interfere seldom to control such discretion intra vires the corporation, except where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment . . . .
>
> 244 U.S. at 263–64, 37 S.Ct. at 510.

*See also Landy v. FDIC*, 486 F.2d 139, 146 (3d Cir. 1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); *Gall v. Exxon Corp.*, 418 F.Supp. 508 (S.D.N.Y.

1976); *Klotz v. Consolidated Edison Co. of New York, Inc.*, 386 F.Supp. 577, 581 (S.D.N.Y.1974); *Bernstein v. Mediobanca Banca di Credito Finanziario-Societa Per Azioni*, 69 F.R.D. 592 (S.D.N.Y.1974).

■ A thorough examination by the Court of the claims, their apparent support and possible deficiencies, including the difficulties of proof in a jury-type case and the elusive appraisal testimony on which much depends to establish overvaluation, the financial means of the directors who are to be released, plus a separate evaluation of the claims against the two estates who are not before the Court and against the two accounting firms who are before the Court, as well as a consideration of all the facts and circumstances together with the costs, risks, infirmities and uncertainties of jury litigation, when compared with a proffer to Republic of a total of $2,164,000.00, persuade the Court that the proposed settlement as amended and the motion to dismiss the outside directors and Neal Stanley from these suits should be and are approved.[1] The approval thereof by Republic's Board of Directors represents a proper exercise of its independent business judgment and represents a fair, reasonable and adequate disposition of the claims in the best interests of Republic, its stockholders and its ongoing business affairs.

*Allowances*

There remains the determination of the reasonable compensation to be allowed out of the recovery by Republic to the attorneys who represented the derivative action plaintiffs on a contingency basis in the pretrial aspects of these cases.

Three applications for allowances have been presented. Liaison Counsel for Plaintiffs filed a request for an allowance of $190,000.00 for services (reduced after the settlement hearing to $137,500.00); counsel for plaintiff Flamm filed a request for an allowance of $225,000.00 for their services

---

1. Adequate notice was furnished to stockholders of the settlement and the dismissals ordered herein, including dismissal of the derivative complaints of the stockholder plaintiffs Flamm and Ferber, which leaves Republic as the only party plaintiff.

(reduced after the settlement hearing to $137,500.00); and counsel for plaintiff Ferber filed a request for an allowance of $20,000.00 for their services.

█ It is well established that the shareholder-plaintiffs in a derivative action are entitled to reimbursement by the corporation for the reasonable expenses of litigation, including counsel fees, when, as in the present case, their efforts have produced a negotiated settlement resulting in a tangible benefit to the corporation. 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1841 (1972). *See, e. g., Milstein v. Werner*, 58 F.R.D. 544 (S.D.N.Y.1973).

█ The starting point of every award of counsel fees "must be a calculation of the attorney's services in terms of the time he has expended on the case" and a valuation of that time. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470–71 (2d Cir. 1974). Then other, less objective, factors, such as the attorney's "risk of litigation," are to be introduced into the calculus. 495 F.2d at 471. *See also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

The applicants for allowances herein have submitted evidence of the services rendered by them and in the light of the Court's personal familiarity with all phases of the record and proceedings herein, that proof is ample for evaluation of the services rendered under the guidelines of *City of Detroit, supra*, and *Johnson, supra*.

### Kass, Goodkind, Wechsler & Gerstein

█ These attorneys have substantially carried the burden of litigation in both the derivative and related class aspects of this case. They were awarded a substantial fee in the settlement of the class suits. That award, however, was not designed to compensate the services allocable to the derivative suits, whose value was estimated to be $25,000.00 and to that extent excluded from the award in the class suit settlement. Since the settlement of the class claims these counsel have, in their capacity as plaintiffs' liaison counsel, devoted hereto 257 hours of partners' time and seven hours

of paralegals' time, valued by them at $52,382.78 at their normal billing rates.

The services performed by these lawyers were on extremely tedious and complex matters, the nature of the instant litigation requiring extensive work in the fields of real estate appraisal and investment and accounting, as well as pretrial and trial preparation. During the past six months they participated in the present settlement proceedings and in the realignment of the parties herein.

On the other hand, the work of these attorneys (and indeed of all the attorneys seeking an award of fees herein) was rendered less taxing by the prior work done in the course of the SEC, Texas Insurance Commissioner, and class action proceedings. Moreover, it does not appear that they were precluded from accepting other employment due to the demands of this litigation.

### Prins, Flamm & Susman

These attorneys, counsel to plaintiff Flamm, commenced work on this matter in March 1974, and their efforts continued through September 1976 when control over pretrial prosecution of the claims asserted herein was given to Republic's Special Counsel. They contributed approximately 1,000 hours, principally by senior attorneys and valued by them at $79,717.50, rendering services in Illinois, Texas and New York.

A question has been raised regarding the eligibility of these attorneys for an allowance under the rule making it a prerequisite that the party represented be qualified to bring the underlying derivative action. *See* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1841 (1972).

It is contended by Republic that Flamm lacks standing to pursue a derivative action under Rule 23.1 of the Federal Rules of Civil Procedure because, allegedly, she was not a shareholder at the time of the transactions of which she complains and she does not fairly and adequately represent the interests of the other shareholders.

Republic's Special Counsel and Liaison Counsel for the plaintiff have stated that

they know of *no* transactions in suit herein that occurred after January 16, 1973, when Lola Flamm became a stockholder of Republic. The last Realty Transaction is said to have occurred in October 1972, with the exception of one minor transaction that was effected on January 3, 1973.

Flamm's response to this question of standing is that the pre-1973 transactions represent a continuing wrong and that where acts complained of are of a continuing character the Fifth Circuit, in which the Flamm suit was instituted (in contrast, perhaps, with other Circuits that have considered the question) permits a derivative plaintiff to sue thereon even if the acts were initiated prior to the purchase of the stockholder's shares. Flamm further contends that any post settlement attack on counsel fees on this score should be rejected on the grounds of waiver and estoppel, since her attorneys participated vigorously in these suits, without objection, from inception in 1974, despite knowledge by the other parties of the date of Flamm's stock purchase. The point came to light in response to inquiry by the Court at the settlement hearing.

Republic replies that the doctrine of the continuing wrong cases decided in the Fifth Circuit is inapplicable here. It also points to stockholder Flamm's familial relationship to the Prins, Flamm & Susman law firm as an indication that the adequacy and fairness of representation required by Rule 23.1 are not satisfied, claiming that Flamm's interest in attorneys' fees for the law firm clearly outweighs the minimal interest in her investment in Republic.

While this question was proliferating into statements and counterstatements by the attorneys, Flamm's counsel were retained by another pair of stockholders located in Chicago whose ownership of Republic stock would qualify them to sue derivatively, assuming the other predicates therefor were met. These stockholders are Norman Asher and Helen Asher, doing business as Robert Allan and Co., a partnership that acquired 1,100 shares of Republic National Life Insurance Co. in 1966. Flamm's counsel have moved to add the Ashers as parties plaintiff herein or in the alternative as intervenors adopting claim X of the amended consolidated complaint as their claim.

However, the Ashers could not, even were it otherwise advisable to add them as plaintiffs, qualify to maintain a stockholder's derivative suit. No demand was made by them on the Board of Directors, a predicate under Rule 23.1, for commencement of derivative action on Republic's behalf. *See Bachrach v. General Inv. Corp.*, 29 F.Supp. 966 (S.D.N.Y.1939); *Brody v. Chemical Bank*, 517 F.2d 932 (2d Cir. 1975).

Nor do the Ashers qualify as objectors to the settlement. Adequate notice and opportunity to object to the settlement were provided for all stockholders. More than 14,000 notices were sent by Republic in advance of the hearing pursuant to Court order. The Ashers did not object in any way to the settlement and time for objection has expired. In any event, the Ashers' belated[2] entrance in any capacity herein would not serve to eke out a standing that Flamm may have lacked to enable Prins, Flamm & Susman to claim compensation for past services rendered herein, were it to be held that Flamm's attorneys were not entitled to make a claim for fees on the ground that they did not represent a viable litigant. *See Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 274–5 (9th Cir. 1964), *cert. denied*, 380 U.S. 956, 85 S.Ct. 1081, 13 L.Ed.2d 972 (1965).

Although there appears to be a substantial legal question concerning the standing of Flamm and her attorneys to claim fees, the Court is reluctant to overlook the zealous and useful services these attorneys rendered from inception of the litigation and feels constrained to recognize the same by an appropriate award. They

---

2. *See Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126–7 (2d Cir.), *cert. denied*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed. 115 (1970); 3 B *Moore's Federal Practise*, § 24.-13[1] at 24–523 (1976).

have participated actively and intelligently in the prosecution and protection of the claims on behalf of Republic from the time the company was placed under supervision by the Texas Commissioner of Insurance and subjected to SEC action, through the filing of Flamm's derivative suit in the Northern District of Texas and the extensive pretrial discovery proceedings both before and after the Multidistrict Panel transferred all litigations to New York for pretrial purposes.

Although these counsel did not themselves negotiate the settlement that created the fund herein, their efforts did contribute to the creation of that fund and an award should be made to them consonant with the value of their services and the overall allowances to be made to those who contributed to the settlement by way of developing the cases to the point which permitted Republic's Special Counsel to undertake and consummate a settlement.

## Milberg & Weiss

The attorneys for stockholder Stanley Ferber have recognized that the services required of them herein were not extensive. They claim to have devoted 120¼ hours of partners' time, 3 hours of the time of associates, and 8¼ hours of the time of paralegals to this litigation.

Their contribution, other than preparing and filing Ferber's complaint in this Court, seems largely to have been as intelligent observers of the services of others. They attended the Multidistrict Panel's proceedings, made court appearances in New York when others or the Court scheduled them, and attended conferences with attorneys.

These counsel also participated in the drafting of the consolidated amended complaint by the Liaison Counsel, complied with discovery requests made upon them (presumably relating to the status of Ferber as a stockholder), attended at a deposition, kept informed of the realignment and settlement proceedings, and approved of the settlement negotiated by the Special Counsel for Republic.

Although the contribution of Milberg & Weiss herein must be regarded as minor, under all the facts and circumstances and the Court's personal familiarity with their services and their importance to the result they are nevertheless entitled to an award of fees and reimbursement of their actual out-of-pocket expenses. Their expenses are fixed at $958.11 until a showing has been made to Republic's satisfaction that the additional amount of $500.00 claimed by them as having been contributed to the Liaison Committee expense fund has not been reimbursed. If the $500.00 is an open item, that amount is additionally allowed to Milberg & Weiss.

The Court finds that the following allowances represent fair and adequate compensation for all services and expenses incurred herein by the respective attorneys to whom awards of compensation are made, namely,

(a) To Kass, Goodkind, Wechsler & Gerstein as liaison counsel for the plaintiffs herein, fees in the amount of $100,000.00 and disbursements in the amount of $6,666.64 or the sum of $106,666.64.

(b) To Prins, Flamm & Susman as attorneys for the plaintiff Lola Flamm, fees of $100,000.00 and disbursements of $5,978.00 or the sum of $105,978.00.

(c) To Milberg & Weiss as attorneys for plaintiff Stanley Ferber, the sum of $12,500.00 and disbursements as heretofore stated.

The foregoing awards are made as part of the settlement and shall be payable by Republic *only if and after* this order and the judgment thereon shall have become final and not further appealable to any Court and the payments from the settling parties have been made to Republic.

There no longer is any reason for the presence in these suits of the plaintiffs Ferber and Flamm following consummation of the settlement and upon the same becoming final as aforesaid the plaintiffs Ferber and Flamm are dismissed as plaintiffs herein, leaving Republic as the sole plaintiff to deal with unadministered matters.

The Court will retain jurisdiction for the enforcement and satisfaction of the judgment to be entered.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a), Fed.R.Civ.P., and shall constitute an order herein.

SO ORDERED.